Philadelphia Civil Service Commission *v.* Eckles, Appellant.

Argued January 8, 1954. Before STERN, C. J., STEARNE, JONES, BELL, CHIDSEY, MUSMANNO and AR-NOLD, JJ.

*Marvin Comisky,* with him *Lemuel B. Schofield,* for appellant.

*Jerome J. Shestack,* First Deputy City Solicitor, with him *Richard H. Markowitz,* Assistant City Solici-

tor and *Abraham L. Freedman,* City Solicitor, for appellee.

OPINION BY MR. JUSTICE CHIDSEY, March 22, 1954:

The question here involved is the validity of the demotion of certain firemen from the rank of captain to the rank of lieutenant made by the Fire Commissioner of Philadelphia. The demotions were upheld by the Civil Service Commission and this appeal is from the order of the Court of Common Pleas of Philadelphia County affirming the action of the Commission.

On December 31, 1951 the appellant, William J. Eckles, Jr., and 17 others[1] were promoted by the then Director of Public Safety from the rank of lieutenant to the rank of captain in the Bureau of Fire, Department of Public Safety of Philadelphia. Under the Philadelphia Home Rule Charter which became effective on January 7, 1952, the Bureau of Fire became the Fire Department and the head of the department designated Fire Commissioner. On March 14, 1952 the Fire Commissioner notified Eckles and the 17 others that they were reduced to the rank of lieutenant, effective as of March 15, 1952. No reasons were assigned for this action, the Fire Commissioner relying upon the Civil Service Regulations adopted January 7, 1952 which provided for a probationary period of from two to six months, during which time a probationer could be demoted, discharged or replaced on the eligible list at the discretion of the Fire Commissioner with the approval of the Personnel Director. Under authority given him by the Regulations, the Personnel Director

---

[1] While this appeal is in the name of Eckles, the City of Philadelphia, by written stipulation, has agreed with the other 17 persons affected, that the result in the instant case shall be determinative of their rights.

set the probationary period at three months. The demotions were made within such period and were approved by the Personnel Director. No question is raised here by appellant as to the regularity of the proceedings, his sole contention being that the Fire Commissioner could not thus demote him without cause. Nor is any question raised as to the authority of the Common Pleas Court to entertain the appeal taken from the decision of the Civil Service Commission. See *Philadelphia Civil Service Commission v. Wilson,* 373 Pa. 583, 96 A. 2d 863.

Appellant contends (1) that since his promotion from lieutenant to captain was made seven days prior to the effective date of the Home Rule Charter, the Philadelphia City Charter Act of 1919 was applicable to him and under it he could not be demoted because the probationary period therein prescribed did not cover promotions but only initial appointments and (2) that, there being no probationary period with respect to promotions under the Act of 1919, the Home Rule Charter and Regulations issued were not intended to apply retroactively to reduce an appointee's permanent status into a probationary status.

In support of appellant's contention that the probationary period prescribed in the Charter Act of 1919 did not cover promotions, appellant points to Article XIX, §15, Act of June 25, 1919, P. L. 581, 53 PS §3335, which provides in part: ". . . When an appointment is made under the provisions of this section, it shall be in the first instance for a probationary period of three months. If during that period the service of that officer or employe is unsatisfactory, the appointing officer shall notify him in writing that he will not be retained in the public service after such three months period. If not so notified, his appointment shall become permanent at the end of the three months proba-

tionary period.", and argues that the language must be limited to initial appointments because it provides that if the employe's service during the probationary period is unsatisfactory, the appointing officer shall notify him that he *will not be retained in the public service after such three months period;* that this language can only contemplate discharge from service and not demotion. Appellant claims that such interpretation is fortified by the language contained in Section 18 as amended by the Act of July 29, 1941, P. L. 579, 53 PS §3338, which provides in part as follows: ". . . No police officer or fireman, except those dismissed during probationary period, shall be removed or discharged, except for cause, upon written charges, and after an opportunity to be heard in his own defense . . . .". Appellant argues that this section provides for written charges in every instance except where the police officer or fireman is *dismissed* during the probationary period, and that dismissal means discharge, when read in connection with the language of Section 15 above emphasized.

In arriving at a contrary conclusion, the lower court in referring to the Act of 1919, as amended, said: ". . . Although the act speaks of dismissal in relation to the probationary period, the term is used in the part of the act dealing with removal of employees who have completed their probationary period, and it is apparent that the word 'dismissal' was used to cover any removal from office. It was an unfortunate choice of language to be sure, and it has been remedied in the new charter.[2] But, it cannot be said that the new

---

[2] Regulation XI, §4 of the Philadelphia Emergency Civil Service Regulations promulgated pursuant to and in accordance with §7-401 (j) of the Home Rule Charter provides: "No appointment or promotion shall be final until a probationary period of not more than six months nor less than two months, as determined by the Personnel

wording of the Home Rule Charter forces the conclusion that there was a change of legislative intent. The new charter merely removed an ambiguity. It is fairly obvious that what was meant is that a new employee may be discharged, and that an old employee may be discharged from his new position and demoted to his former rank. To construe the charter otherwise would be to read into the law a trap, for then, an employee who was otherwise secure in his position could be discharged without cause by the simple expedient of promotion, and dismissal out of the service during the probationary period. The general intent of the civil service laws is to provide a more or less permanent working force wherein the employees are secure in their positions. To interpret the statute as the appellants would have us interpret it would defeat the very aim of the civil service laws. Furthermore, the greater includes the lesser. If the Commissioner had the power to dismiss out of the service entirely during the probationary period, then he surely had the lesser power to demote.".

If the lower court was correct in holding that employes could be demoted as well as discharged during the three month probationary period prescribed by the 1919 Charter Act, then appellant's contention that his status was established by that Act is unavailing for his promotion occurred on December 31, 1951, and his demotion on March 15, 1952 was well within such probationary period.

On the other hand, if the 1919 Charter Act did not permit demotions during the probationary period, appellant is no better off for, in our opinion, he was properly demoted under the provisions of the new

Director, shall have elapsed. During this period the probationer may, with the consent of the Personnel Director, be discharged or reduced in class or rank or replaced on the eligible list.".

Charter. Appellant's able counsel earnestly argues to the contrary, claiming that the new Home Rule Charter is prospective in operation and can be given no retroactive effect as to appellant who was promoted prior to its effective date. Counsel concedes as he must the power of legislative bodies to amend statutorily created rights affecting the conditions of public employment even although changes made will affect present as well as future employes. See *Teachers' Tenure Act Cases*, 329 Pa. 213, 197 A. 344; *Boyle et al. v. Philadelphia et al.*, 338 Pa. 129, 12 A. 2d 43; *Duffy v. Cooke*, 239 Pa. 427, 86 A. 1076. The contention made is that the matter is one of legislative intent and that the provisions of the new Home Rule Charter indicate that it was not intended to apply to appointments or promotions made prior to the Charter's effective date. The use of the word "shall" in many portions of the Charter is pointed to as connoting future operative effect and cases are cited that hold the legislative intention to give enactments retroactive effect must be clearly manifest.

We are satisfied that the new Charter meets this test. Its vital objective was to provide a new uniform law applicable to *all* municipal employes, present and future. Section 11 of the Home Rule Act of 1949 (First Class City Home Rule Act of April 21, 1949, P. L. 665, 53 PS §3421.11) recognized this objective in providing that the Charter ". . . shall become the organic law of the city . . ." and shall thereafter ". . . supersede any existing charter and all acts or parts of acts . . . inconsistent or in conflict therewith.". Thereafter the Philadelphia Home Rule Charter was adopted on April 17, 1951, and became effective on January 7, 1952. On that date, also, the Civil Service Commission, pursuant to the provisions of the Charter, promulgated the Philadelphia Emergency Civil Service Regulations. In

*Lennox v. Clark,* 372 Pa. 355, 93 A. 2d 834, we said at pps. 366, 368, the "... provisions of the 1919 Act, in force on November 6, 1951, were quickly superseded by the provisions on these same subjects contained in the Home Rule Charter, which, duly authorized by the legislature and adopted by the vote of the Philadelphia electorate, became effective on January 7, 1952. Section 7-301 of the Charter provided that all officers and employes of the city, all departments, all independent boards and commissions and all departmental boards and commissions should, with certain exceptions, be under civil service. ... On January 7, 1952, therefore, *all* city officers and employes became immediately subject to these provisions of the Charter, ...".

To adopt appellant's contention would require us to hold that the status of each city employe as to appointment and promotion should be determined by the law in effect at the time of such appointment or promotion, thus creating various distinctions in administrative personnel, the elimination of which was a primary objective of the Home Rule Charter. We observed in the *Lennox* case that the Home Rule Charter came into being presumably in response to popular agitation for the correction of a patchwork system of government. From the occasion of its adoption and from its provisions as well, we think it is clearly manifest that the intent of the new Charter was to provide a comprehensive system of personnel with uniform treatment of all employes, old and new, who enjoyed or obtained civil service status. Consequently the appellant was subject thereto.

Under the Civil Service Regulations promulgated pursuant to and cotemporaneously with the effective date of the new Charter, the probationary period was duly fixed at three months and it expressly covered promotions as well as initial appointments. Three

months had not elapsed from the time of appellant's promotion when he was demoted. The demotion therefore occurred within the three months probationary period established under the new Charter, and was a valid exercise of the authority vested in the Fire Commissioner.

Order affirmed.