Mortimer, Appellant, *v.* Philadelphia Civil Service Commission.

Argued January 13, 1955.    Before STERN, C. J., STEARNE, JONES, BELL, CHIDSEY and MUSMANNO, JJ.

*Charles S. Schermer,* with him *Lemuel B. Schofield* and *Marvin Comisky,* for appellant.

*Murray L. Schwartz,* Deputy City Solicitor, with him *Harvey Levin,* Deputy City Solicitor, *Jerome J. Shestack,* First Deputy City Solicitor, and *Abraham L. Freedman,* City Solicitor, for appellee.

OPINION BY MR. JUSTICE JONES, March 14, 1955:

At a special election, held April 17, 1951, in pursuance of authority conferred by the First Class City Home Rule Act of 1949, P.L. 665, 53 PS §3421.1 et seq., the electors of Philadelphia voted their approval of a Home Rule Charter for the City. According to the Charter's terms, its effective date for the most part was fixed as January 7, 1952. The narrow question raised on this appeal is as to which of these two dates —April 17, 1951, or January 7, 1952—the framers of the Charter intended by use of the phrase "at the time of the adoption of this charter" in Section A-104. The question thus involved is purely one of law. The parties have entered into an agreed statement of facts in keeping with Rule 41 of this court.

Albert T. Mortimer, the appellant, after civil service test and certification, was appointed a patrolman by the City in 1931. On April 17, 1951, he held the rank of sergeant of detectives, having been promoted to that position in October, 1950, without a competitive examination. On September 8, 1951, he was again promoted without competitive examination to the rank of lieutenant of detectives which is the rank he held on January 7, 1952. During 1952 the positions in the police department were reclassified and the rank of lieutenant of detectives became that of police captain. Mortimer thereafter took a qualifying test for the rank of police captain. His paper was scored only on the basis of his qualifications for the rank of police sergeant, the reclassified equivalent of sergeant of detectives, which was the rank held by him on April 17, 1951. On June 1, 1953, Mortimer was temporarily assigned as a police lieutenant, and, on June 16th, he was likewise assigned as a provisional police captain. He served in that position until March 8, 1954, when he was reassigned to the permanent rank of police ser-

geant. Mortimer appealed this reassignment to the Civil Service Commission which dismissed his appeal. An ensuing appeal to the Common Pleas of Philadelphia County was dismissed in an order from which Mortimer took the instant appeal.

The material factual situation is that Mortimer was a sergeant of detectives (now denominated police sergeant) on April 17, 1951, when the electors of Philadelphia approved the Charter and was a lieutenant of detectives (now denominated police captain) on January 7, 1952, the generally effective date of the Charter. The question of which rank Mortimer is entitled to hold depends entirely upon when the Home Rule Charter was "adopted". Section A-104 of the Charter provides, inter alia, that "Employees of the City *at the time of the adoption of this charter* . . . who were not appointed after civil service test and certification shall also be continued in their respective positions provided that *within one year after this charter takes effect* . . . they pass a qualifying test . . ." (Emphasis supplied).

There is no dispute that Mortimer is entitled, as a result of his qualifying test, to retain his position of police sergeant. He asserts, however, that he is entitled to take a qualifying test for the rank of police captain (the equivalent of former lieutenant of detectives), contending that the Charter was not "adopted" until it became generally effective on January 7, 1952, and that he is entitled to qualify for the rank held by him on that date. The appellant's contentions are patently untenable.

Given its common and ordinary meaning, as a cardinal rule of construction requires, the precise language of the Charter irresistibly compels the conclusion that its framers used the terms "adoption" and "effective date" of the Charter discriminately to indicate two separate and distinct times. Thus, Section

A-104 of the Charter provided that non-civil service employees of the City at the time of the Charter's *adoption* shall be entitled to retain their respective positions provided they pass a qualifying test within one year after the Charter *takes effect.* Use of the two terms within the same Section and with respect to the same class of employees was a deliberate recognition of an intended difference between the adoption date and the effective date of the Charter and that the two were not the same. Should any doubt remain in the mind of anyone that the Charter was *adopted* on April 17, 1951, such doubt should be instantly dissipated by the language of Section A-200 of the Charter which provided that, with certain exceptions, the Charter should become effective on January 7, 1952. As to the exceptions, Section A-200 (1) provided that Sections 2-100 to 2-103, 3-200 and 3-300 "shall become effective immediately upon the adoption of this charter by the electors" and Section A-200 (2) provided that a part of Section 3-100 (a) "shall . . . become effective upon adoption of this charter." It is difficult to see how the framers of the Charter could have more clearly indicated that the adoption date of the Charter was not its generally effective date. Obviously, no part of the Charter could possibly become effective until the Charter had been adopted. If, therefore, the time of the adoption of the Charter was to be the date fixed for it to become generally effective, viz., January 7, 1952, as the appellant contends, then the above-mentioned exceptions to the generally effective date of the Charter were meaningless. But, we are further required, in construing a statute, not to render any of its provisions ineffectual if possible. What Section A-200 (1) and (2) was manifestly designed to accomplish was that, while the Charter generally would not become effective until January 7, 1952, the specially designat-

ed Sections were to become effective immediately upon the approval of the Charter by the electors (i.e., the adoption) and that was on April 17, 1951.

This court has stated time and again that the Philadelphia Home Rule Charter was *adopted* on April 17, 1951, the date of its approval by the electors of the City: see *Carrow v. Philadelphia,* 371 Pa. 255, 258, 89 A. 2d 496; *Lennox v. Clark,* 372 Pa. 355, 359, 93 A. 2d 834; *Philadelphia Civil Service Commission v. Eckles,* 376 Pa. 421, 426, 103 A. 2d 761; *Clark v. Meade,* 377 Pa. 150, 153, 104 A. 2d 465; *Cornman v. Philadelphia,* 380 Pa. 312, 314, 111 A. 2d 121; and *Commonwealth ex rel. Truscott v. Philadelphia,* 380 Pa. 367, 370, 111 A. 2d 136. Indeed, each and every member of this court at some time has individually recognized in the reported cases that the Charter was adopted on April 17, 1951. Of course, the foregoing is not intended to suggest that this court has heretofore decided that the Charter was adopted on April 17, 1951. That question has never heretofore been raised. But, our unanimously similar prior expressions as to the date of the adoption of the Charter significantly reveal the conclusion impelled when the words employed are given their plain and ordinary meaning.

In support of his contention that the phrase "at the time of the adoption of this charter" means the generally effective date of the Charter, the appellant relies principally on cases from New York and Wyoming. On the other hand, the appellee cites decisions from Ohio and Missouri to opposite effect. But, whatever conclusions other jurisdictions may have reached in respect of litigation arising there, it is clear that problems growing out of the City-County consolidation, the First Class City Home Rule Act and the Philadelphia Home Rule Charter are truly *sui generis* and must be resolved by ascribing to the language used in the rele-

vant enactments its plain and ordinary meaning in relation to the purposes to be accomplished and not by mere reference to out-of-State decisions.

The appellant also seeks aid for his contention from the annotations to Section A-104 where it is stated that it was not the purpose of that Section to remove City employees who had faithfully and creditably performed their duties of employment "prior to the effective date" of the Charter merely because they were not civil service employees pursuant to test and certification under the City's 1919 Charter. Apart from the fact that it is the language of the Charter, and not of the annotations, which is here for interpretation, the plain words of Section A-104 fix the appellant's rights as of the Charter's adoption date. Consequently, we may not disregard the clear and unambiguous language of the Charter on the pretext of pursuing a spirit even if the spirit were as the appellant would have us infer. Concededly, the manifest purpose of Section A-104 was to retain experienced non-civil service personnel in the City's employ on the effective date of the Charter, but that purpose in no way affects the portion of Section A-104 which freezes the positional rights of non-civil service personnel as of the date of the Charter's adoption. Section A-104 provides that civil service employees of the City at the time of the Charter's adoption should continue as such without further examination and that non-civil service City employees and those who became City employees as a result of City-County consolidation would likewise continue in the positions held by them at the time of the adoption of the Charter but only if they could qualify for such positions on the basis of a non-competitive test.

Nor is the appellant unfairly discriminated against by reason of the Civil Service Commission's Supplemental Emergency Regulation C (31.2) which specifies

that civil service personnel in the City's classified service on January 7, 1952, "shall be continued in their respective positions without further examination until lawfully separated therefrom." The mere fact that Regulation 31.2 provides for a different cut-off or freezing date for civil service employees than that which exists for non-civil service personnel does not constitute an arbitrary classification by the Commission. Civil service employees, whenever appointed, obtain their status in the City's classified service only after certification from a roster of eligibles determined on the basis of competitive examination. Whether that examination was conducted before or after the Charter's effective date, it would, for all practical purposes, be substantially the same. Consequently there was no need to require further examination of those appointed to or promoted in the classified service, upon test and certification, before or after the adoption of the Charter. Such was fully recognized by the framers of the Charter in Section A-104.

With respect to non-civil service employees, however, other factors predominate. Because these employees were not appointed or promoted after test and certification, they were required by Section A-104 to pass a qualifying examination in order to retain the status held by them when the Charter was adopted. The obvious purpose of freezing their status as of the adoption of the Charter and requiring a qualifying test to retain that status was designed to thwart any possible unmerited appointment to or promotion in the City's service during the period between the Charter's adoption and its effective date. The different treatment accorded civil service and non-civil service employees, premised as it was upon practical and compelling reasoning, does not, therefore, offend the "comprehensive system of personnel with uniform treatment of all

employees" requirement laid down by this court in *Philadelphia Civil Service Commission v. Eckles,* supra.

Nothing that was said in *Butcher v. Philadelphia,* 380 Pa. 290, 110 A. 2d 349, derogates from any of the conclusions herein reached. Prior to the decision of this court in *Carrow v. Philadelphia* on June 24, 1952, it was not known with certainty whether the City-County Consolidation Amendment was self-executing and, consequently, it could not be known whether employees appointed to one of the former County offices could be so appointed only as City employees. It was in that situation that the Civil Service Commission promulgated Emergency Regulation B (31.1) which provided that all employees appointed by the County on or before July 2, 1952, should be continued in their positions on the basis of a qualifying test only. Accordingly, in the *Butcher* case we sustained the validity of Regulation 31.1 as a valid exercise of the Commission's discretion in view of the emergent situation obtaining as a result of City-County consolidation.

The appellant also cites the language of this court in *Carrow v. Philadelphia,* supra, to the effect that employees who had long experience in their jobs were not compelled to take a competitive examination but could qualify for their positions solely on the basis of a noncompetitive test. But, as was aptly observed by the learned court below in the instant case, "This . . . helps appellant not a whit, but rather tells against him. He has never before held the position to which he now claims permanent tenure. As to this position he is in the category, not with the experienced former county employee but with the newly appointed employee who never before held the position which he seeks to retain. No argument based upon long experience in his position can help him."

528

The appellant's final contention that his appointment as a lieutenant of detectives, while not the result of test and certification, was equivalent thereto, does not merit extended discussion. Section A-104 states that only those employees appointed after test and certification are entitled to retain their positions without further test, and the appellant admits that he was not appointed as a lieutenant of detectives as the result of test and certification.

The order is affirmed at the appellant's costs.

Mr. Justice BELL dissents.