Jordan, Appellant, *v.* Kane.

Argued March 21, 1957. Before JONES, C. J., BELL, CHIDSEY, MUSMANNO, ARNOLD, JONES and COHEN, JJ.

*Leonard Boreman,* with him *Solis Horwitz* and *Walter A. Koegler,* for appellant.

*Joseph H. Ridge,* Assistant County Solicitor, with him *Nathaniel K. Beck,* County Solicitor and *John F. Murphy,* Assistant County Solicitor, for appellees.

OPINION BY MR. JUSTICE COHEN, April 26, 1957:

Charles F. Jordan was an Allegheny County patrolman who, because of an infirmity arising out of the line of duty, applied for, and was assigned to, a position as inside policeman in accordance with the Act of July 28, 1953, P. L. 723, §1518(h). This section of the Act provided, inter alia, that in the event, "an outside policeman is found to be physically unfit to perform such duties due to an infirmity resulting from the performance of his duties as a policeman, . . . [he] shall be assigned to inside work as building policeman

or other special duties *without any diminution in pay."* (Emphasis supplied).

After Jordan had begun his new duties, the defendant commissioners refused to pay him the salary of an outside policeman on the ground that his infirmity was not a service connected disability. Jordan thereupon instituted this action in mandamus to compel the payment of the disputed compensation. While the case was pending in the court below, the amendatory Act of July 27, 1955, P. L. 284, 16 P.S. §4518 became effective. This amendment deleted the words "without any diminution in pay" and inserted in lieu thereof, "and be paid such compensation as shall be fixed by the salary board for building policemen."

The court held that the amendatory Act of 1955 was applicable to Jordan. Consequently, the court concluded that the Salary Board had validly adjusted Jordan's salary when it paid him the regular wage of an inside policeman. Jordan appeals maintaining that contrary to the general rules of statutory construction the Amendatory Act was construed and applied retroactively to him.

A discussion on the question of whether the 1955 Act is retroactive or prospective is unnecessary since this Act was not applied retroactively to the appellant. The court below held that Jordan was entitled to the salary of an *outside* policeman from the date of his transfer until the effective date of the amendment.

Further, we are of the opinion that none of Jordan's rights were infringed upon by the legislation authorizing the reduction of his salary.

The appellant has no constitutional claim to the continuation of his existing rate of remuneration. Although Article 3, Section 13 of The Pennsylvania Constitution provides that "No law shall extend the term of any public Officer, or increase or diminish his salary

or emoluments, after his election or appointment." we have explicitly held that policemen do not have the status of public officers within the meaning of this provision. *Zeloyle v. Bettor*, 371 Pa. 546, 552, 91 A. 2d 901 (1952).

Neither has the appellant a vested contractual right in his rate of compensation. There is no question of the "power of legislative bodies to amend statutorily created rights affecting the conditions of public employment . . . although changes made will affect present . . . employes. . . ." *Philadelphia Civil Service Commission v. Eckles*, 376 Pa. 421, 426, 103 A. 2d 761 (1954).

Appellant, in effect, seeks a decision that the salary rights and conditions of employment of each government employe are unshakably determined by the most favorable law in effect during his employment. Were we so to hold, the resulting patchwork quilt of salary distinctions, preventing uniform treatment of all employees in a given classification, would cause inequities, impair morale, curtail experimentation in wage and salary programming, and hence, impede the effective administration of government.

Judgment affirmed.

---

DISSENTING OPINION BY MR. JUSTICE MUSMANNO:

On September 29, 1952, after ten years faithful service as an Allegheny County outdoors policeman, the plaintiff Charles F. Jordan was stricken with a heart condition which incapacitated and hospitalized him for some six months. He returned to work in March, 1953, when, a year later, America's most dreaded malady, struck at him again. In July, 1954, he applied for an "inside" policeman's job under the Act of 1953, July 28, P. L. 723, which provides, inter alia:

"In cases where a member of a county police force whose duties are those of an outside policeman is found to be physically unfit to perform such duties due to an infirmity resulting from the performance of his duties as a policeman . . ., such member, upon application to the board of county commissioners, if there is any vacancy existing in the number of building policemen, building guards or other positions, the responsibility of which is building protection or security, as set forth in the budget of the county, shall be assigned to inside work as building policeman or other special duties *without any diminution in pay."* (Emphasis supplied) The application was approved by the proper county authorities, but a question arose as to whether Jordan's disability was the result of his police service. He initiated legal action to compel payment of his full salary as provided by the Act of 1953, and the Court of Common Pleas of Allegheny County eventually determined that his disability was service-connected.

However, in the meantime the General Assembly of Pennsylvania, in 1955, amended the Act of 1953 by deleting the words "without any diminution in pay," and substituting therefor: "and be paid such compensation as shall be fixed by the salary board for building policemen." The pay of an outside policeman is $357 per month, that of an inside policeman $290 per month. It is this difference in wages which the plaintiff policeman seeks. The lower Court refused the higher wage, and this Court has affirmed the lower Court. I dissent.

I dissent because the government has no more right to repudiate its obligations than a private employer. Nor is there any indication that the Legislature, in enacting the amendment of 1955, intended to deprive policemen already enjoying the benefits of the Act of

1953 of the standard of pay there stipulated. All legislation applies to the future unless a retroactive intention is clearly manifested: "No law shall be construed to be retroactive unless clearly and manifestly so intended by the Legislature." (Sec. 56, Statutory Construction Act, 1937, May 28, P. L. 1019.)

The Majority Opinion argues that to allow the plaintiff the wage rate assured him under the Act of 1953 would be to "cause inequities, impair morale, curtail experimentation in wage and salary programming, and hence, impede the effective administration of government."

I apprehend no such catastrophe. Charles F. Jordan is a policeman who suffered a cardiac disability in line of duty. To be injured in the heart is no less a traumatic disablement than to be shot in the lungs. And if a grateful people, through its representatives in the General Assembly, determined in 1953 to supply to anyone so disabled a pair of crutches, no one can say that two years later the Legislature intended to take away one of those crutches, unless such an inhuman seizure is spelled out in language which can admit of no doubt.

In June, 1954, this Court said: "According to the cardinal principle of justice and fair dealings between government and man, as well as between man and man, the parties shall know prior to entering into a business relationship the conditions which shall govern that relationship." (*Hickey v. Pittsburgh Pension Board,* 378 Pa. 300, 309.)

When Jordan, in 1954, elected to take an inside policeman's job, he had every reason to believe that he would continue to receive an outside policeman's salary. The law so stated. The highest expression of sovereign authority so declared. If Jordan had had any reason to doubt the reliability and durability of the law which impelled him to take the inside police-

man's job, he might have decided to retain his outside policeman's job. The higher wage in the latter position might have meant so much to him that he would have preferred to adhere to that position regardless of any accompanying pain and discomfort. However, having every assurance in the stability of the law and having every confidence that the decisions of our Courts are not written in the crumbling sands of an ocean-washed shore, he changed his job and adjusted his routine of life to conform to what the Legislature proclaimed in 1953. As late as August, 1954, we assured him that there would be no change in the procedure which ascertained and preserved his rights. We said: "Whether it be in the field of sports or in the halls of the legislature it is not consonant with American traditions of fairness and justice to change the ground rules in the middle of the game." (*Hickey v. Pittsburgh Pension Board*, supra, 310.)

Has this Court now changed the ground rules in the middle of the game?

The Majority Opinion speaks of the power of the Legislature "to amend statutorily created rights affecting conditions of public employment . . . although changes made will affect present . . . employees."

But the legislation in question does not treat of classification of employees. The Act of 1953 had to do with employees disabled in service. They are necessarily a small number. The Legislature conferred upon those unfortunate persons certain rights. The Legislature could, of course, change the rate of pay of those injured *after* the new legislation went into effect. It did, in fact, by the Act of July 27, 1955, make a change in that respect, but the Act, while remedial in procedure was not therapeutic in application. It did not heal Jordan's heart disability which occurred while the Act of 1953 was *law,* and not history.

8

The Act of 1955 could not change a contractual relationship which had already been entered into between Charles F. Jordan and his employers.

As late as January 17, 1957, this Court, spoke out in language intended for the centuries to come: "The general rule of construction is that amendatory statutes are not to be construed as retroactive unless such a construction is so clear as to preclude all questions as to the intention of the Legislature: (citing cases). When the language of a statute is general, and might be given both retroactive and prospective operation, it will be held to be prospective only: (citing cases). This canon of statutory construction is particularly applicable when the legislation in question interferes with existing contractual obligations or antecedent rights:" (*Rupert v. Policemen's Relief and Pension Fund*, 387 Pa. 627, 631.

In April, 1957, only *three months* after the above pronouncement, I still adhere to what was there and then said by this Court.