## Mortimer v. City of Philadelphia (No. 2)

204

*Sara Duffy*, for plaintiff.

*David Berger*, City Solicitor, and *James L. Stern*, Deputy City Solicitor, and *Isador Kranzel*, Assistant City Solicitor, for defendant.

SPORKIN, J., November 5, 1959.—Plaintiff filed this action in equity to compel his retroactive appointment as captain in the Philadelphia Police Department and for relief incidental thereto.

This suit is grounded principally upon allegations that defendants improperly and arbitrarily established plaintiff's grade in a civil service examination for promotion to the rank of police captain. Plaintiff charges that his final grade was calculated erroneously and contrary to law, and also that various city officials have discriminated against him and have, by fraudulent conduct and otherwise, misled him.

The following are the pertinent allegations of the complaint. On August 25, 1931, after civil service examination and certification, plaintiff was appointed patrolman in the then Department of Public Safety, and on April 15, 1944, following another civil service

test, he was promoted to the rank of detective. Thereafter, on October 17, 1950, he was appointed to the rank of sergeant of detectives and to the rank of lieutenant of detectives on September 8, 1951 (both of these promotions were without competitive examination and pursuant to the 1919 City Charter). The Home Rule Charter of Philadelphia was adopted on April 17, 1951. On December 31, 1952, the rank of lieutenant of detectives was reclassified to that of police captain, in which latter grade plaintiff served until June 1, 1953, when he was temporarily assigned as a police lieutenant. On June 16, 1953, he was temporarily reassigned as a provisional police captain, in which capacity he served until March 8, 1954, at which time he was reduced to the rank of police sergeant, which rank he now holds.[1]

Plaintiff further alleges that on April 16, 1953, he, and all other members of the Philadelphia Police Department, were notified that competitive civil service examinations would be held for promotion to the ranks of police sergeant, police lieutenant, police captain, police deputy inspector and police inspector; that with respect to the ranks of captain, deputy inspector and inspector, the examination notice specified that grading would be based 35 percent on written test, 45 percent on oral test, 10 percent on performance rating and 10 percent on seniority.

The complaint sets forth that plaintiff applied for and took the foregoing civil service examination in order to qualify for promotion to the rank of captain, and that on March 5, 1954, he was officially notified that he had received a final rating of 78.68 in this examination, thereby placing him no. 54 on the eligibility list for captaincy.

---

[1] These facts are set forth in Mortimer v. Philadelphia Civil Service Commission, 380 Pa. 520 (1955), and Mortimer v. City of Philadelphia, 14 D. & C. 2d 376 (1957).

Plaintiff contends that his final grade of 78.68 was erroneous because the personnel director, in computing this grade, applied a performance rating of "standard" instead of the "outstanding" performance rating accorded plaintiff in an annual performance report submitted by his superior on November 21, 1953, and that, therefore, his position was no. 54, instead of no. 4, on the eligibility list.[2]

The complaint further avers that the performance rating of "outstanding," which was submitted by plaintiff's superior, was deliberately ignored with the intention to discriminate against him, and that the application of the "standard" rating was contrary to the formal notice of examination, the civil service regulations and the provisions of the Philadelphia Home Rule Charter.

Plaintiff also alleges that subsequent to the date he received official notice of his grade in the competitive civil service examination, certain statements were made to him by members of the city solicitor's office and by the personnel director, to the effect that his final rating would be changed and he would be given credit for an "outstanding" performance rating, and that he would be accorded a correspondingly higher position on the 1954 eligibility list for captaincy; that subsequently he was informed that his final rating of 78.68 would not be changed, and that since the time of the alleged erroneous grading of his examination, plaintiff has been transferred to undesirable assignments for the purpose of injuring his career as a police officer.

Plaintiff avers that because of his reliance upon the

---

[2] The evidence adduced at trial disclosed that had plaintiff and all other candidates for captaincy been accorded their 1953 annual performance ratings, plaintiff would have been no. 19 on the eligibility list, and not no. 4.

above-mentioned statements by administrative officials of the city, he took no further promotional examinations for police lieutenant and, hence, cannot now qualify for examination for police captain.

Plaintiff prays that the court order recomputation of his final rating on the 1953-54 competitive civil service examination, based upon a performance rating of "outstanding"; that the court order revision of the 1954 eligibility list for captaincy and determination of plaintiff's proper place thereon, and the date on which plaintiff would have been appointed police captain had a performance rating of "outstanding" been applied in grading his examination, and that, thereafter, the court order plaintiff's retroactive appointment to the rank of police captain, together with all applicable rights, privileges, benefits and duties.

In their answer, defendants deny the following: That plaintiff's final rating of 78.68 on the competitive civil service examination was erroneous; that plaintiff's position of no. 54 on the eligibility list was erroneous; that plaintiff's performance rating of "outstanding" was ignored; that the actions of defendants were in any manner arbitrary, capricious or discriminatory. Further, they deny that plaintiff was misled by statements of administrative officials of the city, or that plaintiff has been transferred to undesirable assignments.

Defendants' answer avers that the annual performance rating submitted by plaintiff's superior on November 21, 1953, designating plaintiff as "outstanding" was not the proper rating for use in the examination in question, but that the correct rating was one promulgated by the police commissioner and that, in plaintiff's instance, this rating was "standard."

Under new matter, defendants assert that the 1954 eligibility list for captaincy has expired because of the provisions of section 7-401(f) of the Philadelphia

Home Rule Charter which places a two-year limitation on such list, and that, hence, plaintiff's request for a revision of this list is moot. Secondly, defendants assert that the police commissioner has discretionary power to appoint from the eligibility list by virtue of section 7-401(h) of the charter, and plaintiff might have been passed over irrespective of his position on the eligibility list.

Plaintiff, in his reply to new matter, alleges that section 7-401(f) of the Philadelphia Home Rule Charter is not applicable to this case because the cause of action is grounded upon discriminatory acts perpetrated against him, and because the eligibility list in question was a "special" list, since the examination was a "stepped-up" one.[3] Plaintiff also states that since the adoption of the Philadelphia Home Rule Charter, no candidate on an eligibility list of the police department has been passed over by the police commissioner.

On July 16, 1956, plaintiff withdrew a motion for preliminary injunction which had been filed when this action was instituted.

On May 21, 1957, defendants filed a motion for judgment on the pleadings. This motion was denied by this court: Mortimer v. City of Philadelphia, 14 D. & C. 2d 376 (1957).

Issue having been joined, the matter was heard by the chancellor without a jury. . . .

### Discussion

We held in an earlier phase of this litigation that equity has jurisdiction of the subject matter and the parties to this suit: Mortimer v. City of Philadelphia, supra.

---

[3] A "stepped-up" examination is one which permits candidates to compete for a particular grade or rank, regardless of their existing grade or rank.

The gravamen of this action relates to an open competitive examination plaintiff took for promotion to the rank of captain, given pursuant to the civil service provisions of the Philadelphia Home Rule Charter. The principal questions here presented are: (1) Whether the use of a "special" rather than an "annual" performance rating system, as one of the factors in computing plaintiff's grade in the aforementioned examination, was in violation of the provisions of the Philadelphia Home Rule Charter and the civil service regulations promulgated thereunder, and (2) whether such use constituted an abuse of administrative discretion.

We find ourselves bound both by precedent and by the realities of municipal administration to observe the basic premise that courts will not interfere with decisions or actions of the administrative branch of government unless such decisions or actions are arbitrary, capricious, or contrary to law: Whisted v. Philadelphia, 385 Pa. 213 (1956); Crede v. Pittsburgh, 355 Pa. 369 (1946); Wagner v. Pittsburgh, 352 Pa. 647 (1945); Raffel v. Pittsburgh, 340 Pa. 243 (1940); Souder v. Philadelphia, 305 Pa. 1 (1931). See also Mortimer v. City of Philadelphia, supra, and Mautz v. Philadelphia, 10 D. & C. 2d 4 (1956). In the light of the foregoing authorities and the record before us, we feel that plaintiff is not entitled to the relief which he seeks.

In our view, the use of the special rating system did not constitute a violation of the Philadelphia Home Rule Charter or of the civil service regulations. While section 7-401(n) of the charter states that "annual efficiency ratings of performance" should be "considered" as a "factor in promotion," this provision must be given a directory rather than mandatory interpretation in order to effectuate the broader pur-

poses of the charter. Under the Statutory Construction Act of May 28, 1937, P. L. 1019, art. IV, sec. 51, 46 PS §551, the object of judicial interpretation and construction of a statute (and a fortiori, the city charter) is to ascertain and effectuate the intention of its framers. The court may ascertain such intention, inter alia, from (a) the occasion and necessity for the legislation; (b) the mischief to be remedied, and (c) the object to be attained: Commonwealth v. Emerick, 373 Pa. 388, 391 (1953); McClelland v. Pittsburgh, 358 Pa. 448 (1948); Salvation Army Case, 349 Pa. 105 (1944). Our Supreme Court has held that the philosophy underlying the adoption of the personnel provisions of the Philadelphia Home Rule Charter was acceptance of the doctrine of civil service and the rejection of the "spoils system": Cornman v. Philadelphia, 380 Pa. 312, 321 (1955).

We must give proper and deserved effect to the uncontradicted testimony of Police Commissioner Thomas J. Gibbons and Deputy Personnel Director Foster B. Roser, which we credit, to the effect that at the time of the adoption of the charter, continuing to April 16, 1953 (the date of the announcement of the subject examination), the operation of the "spoils system" had severely impaired the morale of the Philadelphia Police Department, and prevented top-grade officers from attaining command positions. To remedy this situation and to implement the philosophy and intent of the charter, Personnel Director Frank Escobedo and Police Commissioner Gibbons conceived the idea of giving the open competitive examination for promotions in the ranks of sergeant, lieutenant, captain, deputy inspector and inspector. All members of the police department, who met stated minimum experience requirements, were eligible to compete for one or more of the mentiond ranks. This type of open

competitive examination was unusual, since the normal procedure in the police department is and was to permit officers to compete only for the rank immediately above his own rank, whereas in this examination officers were allowed to compete at levels more than one rank above positions then held. Approximately 3,600 members of the police department applied for this examination; 820 applied for promotion to the rank of captain alone.

The employment of a system of special performance ratings, which lies at the very core of this controversy, was essential to the success of this examination. On April 16, 1953, the date on which the examination was announced, the system of annual efficiency ratings of performance provided for in the charter was not yet in effect. Although such a system was subsequently inaugurated, and although plaintiff did, in fact, receive an annual performance rating of "outstanding" on November 23, 1953, ratings were not completed for all of the contestants in the examination until as late as April of 1954, one month after the eligibility list for captaincy was established.

The delay in effectuating this system cannot be considered an abuse of administrative discretion. Neither the charter nor the emergency civil service regulations placed any time requirement for the establishment of the annual performance rating system. A reasonable time was necessary to implement the all-inclusive provisions of the charter, and we believe the elapsed time in this instance was not unreasonable. Cf. Cornman v. Philadelphia, supra.

Conceivably, this examination could have been postponed until the indefinite date when the first annual efficiency ratings of performance would have been completed with respect to all applicants for promotion. We cannot construe the provisions of the Home Rule Charter to make such an action mandatory, when the

resultant delay could have had the effect of seriously impairing the morale of police personnel. Obviously, considerable time was needed to complete a comprehensive system of annual performance ratings and specific civil service regulations to govern the mechanics of the determination and use of these ratings. Surely, crucial police work should not be stymied while civil service machinery is being readied to perform in accordance with the charter. Moreover, it would have been undesirable from the standpoint of uniformity to use an annual performance rating system as a factor in plaintiff's grade, and to use some other system in grading those candidates whose annual performance ratings were not yet available. Such action would of itself be arbitrary and, hence, contrary to law. Again, for the sake of uniformity, previous performance ratings accorded to the candidates could not properly be used in this examination since such ratings were compiled for various past examinations, and were employed neither consistently nor at regular intervals.

At this point in our discussion it should be noted that annual performance ratings are always accorded by the immediate superior of the person rated. On the other hand, the essential characteristic of a "stepped-up" examination, such as the one before us, is that superiors and subordinates are engaged in competition with one another for the same positions. It is, therefore, patently clear that even if annual ratings had been available, their use in the subject "stepped-up" examination would have been fatally defective, because superior officers would have been placed in the position of determining the performance rating of other officers with whom they were in competition. Obviously, fairness could not be guaranteed under such circumstances. However, the special rating procedure devised for this examination solved this prob-

lem by utilizing three noncontestants to function as raters.

Because of the obvious necessity to use "special" rather than "annual" performance ratings in such an open competitive examination, an interpretation of the charter by this court, declaring the use of "annual" ratings to be mandatory, would defeat the very purpose for which the instant examination was given. We cannot believe that the framers of the charter intended to stultify the civil service system in such a manner.

We, therefore, conclude that the Home Rule Charter grants to the personnel director an area of discretion in the use of performance ratings, which we believe allows him to initiate a system of special performance ratings when the situation so demands. Such a situation presented itself here when the open competitive examination was found to be necessary.

We further conclude that the manner in which this discretion was exercised, wherein plaintiff received a special rating of "standard" was neither arbitrary nor capricious. Under the special rating system, a panel consisting of Police Commissioner Gibbons, Deputy Commissioner Burns and Chief Inspector Noons graded the performance of the candidates. None of these three men were themselves competing in the examination. Because of the large number of applicants, the members of the panel could not possibly have had personal knowledge of the qualifications of each candidate so as to enable them to accord individual ratings. For the panel to acquaint themselves personally with the ability of each individual candidate, would have delayed for a considerable period of time the establishment of the eligible list. In view of the enormity of the task, the rating panel devised a procedure whereby the candidates with unsatisfactory performance records would be eliminated, while substantially all of the

remaining applicants would be accorded a "standard" rating.

That the use of such a method is within the wide area of discretion granted to the personnel director, is discernible in the annotation to section 7-401 (c) of the Philadelphia Home Rule Charter:

" 'Tests prepared by the personnel agency should be designed to eliminate those who are not qualified for entrance into or promotion within the classified service and to discover the relative fitness of those who are qualified. The Director should be free to use any investigation of education and experience and any test of capacity, knowledge, manual skill, character or physical fitness which in his judgment serves this end.' "

It is clear that the effect of the procedure used was to neutralize past performance as an operative factor in determining the promotion of all applicants, except those with unsatisfactory records. While we cannot condone the beclouding of the actual weights of the operative factors [4] which resulted from the failure to publicize this procedure, nevertheless the system used can be termed neither arbitrary nor capricious. On the contrary, we feel that the system employed was the most reasonable one, taking into consideration the existing needs of the police department and the welfare of its personnel.

In an earlier case involving police department examinations, this court stated: [5]

---

[4] By neutralizing the factor of performance ratings, the actual weighing of the operative factors was:

| | |
|---|---|
| Written test | 43.75% |
| Oral test | 43.75% |
| Seniority | 12.50% |

[5] Muller v. Philadelphia, Court of Common Pleas No. 2, December term, 1954, no. 2056, opinion by Carroll, J. (now president judge), filed June 8, 1955.

"It is a fundamental concept inherent in our system, based as it is upon the separation of powers, that courts will stay the arm of the executive branch in the performance of its duty only where conduct is so irregular as to deprive individuals of their fundamental rights or where fraud and collusion exist."

The evidence adduced during the extended hearing of this matter clearly indicates that plaintiff was not discriminated against, nor deprived of a fundamental right, nor was he the victim of fraud or collusion. Accordingly, we find no arbitrary or capricious conduct on the part of defendants.

Moreover, the record is devoid of evidence of bad faith or other manifestation of corrupt motive on the part of any of defendants, nor is there evidence of discrimination or personal prejudice against plaintiff.

Plaintiff's dissatisfaction with duty assignments he received or did not receive is not, without more, a sufficient basis for this court to intercede in the administrative process: Richardson v. Samuel, Court of Common Pleas No. 2, March term, 1951, no. 568, opinion by Gordon, P. J., filed January 21, 1952.

In passing, it must be noted that even if we find, arguendo, that plaintiff should have been accorded a higher position on the eligibility list, we could not compel his appointment to the rank of captain as requested in the complaint. Section 7-401(h) of the Philadelphia Home Rule Charter gives the appointing authorities the power to select appointees from the two highest candidates on the eligibility list.[6] If the

---

[6] The annotation to section 7-401(h) of the Philadelphia Home Rule Charter provides:

"An appointing authority is given a choice of the two highest persons on an eligible list so that he may consider factors such as personality, appearance and the like, in addition to an examination grade, in making an appointment. If an appointing authority has rejected twice the same candidate, he would not have any

top candidate is passed over twice, he is, in effect, removed from the list. Such a provision manifests an intent to give the administrative departments some discretion in their appointments: DeToro v. Pittston, 351 Pa. 178, 182 (1945). Of course, such discretion cannot be exercised in an arbitrary or capricious manner, but the choice in the first instance belongs to the appointing authorities and not to the courts.

We have given extended consideration to the basic issues in this case, namely the use of the "special" performance ratings in the calculation of final grades in the open competitive civil service examination. We have followed this course notwithstanding that this case might have been summarily decided by reason of plaintiff's laches. However, the basic fairness and legality of an important civil service examination involving police personnel is here challenged, and in the opinion of this court the litigants are entitled to have a direct determination of whether the method employed in according performance ratings to the candidates should be upheld or condemned.

In our judgment, the delay of plaintiff in bringing this action constitutes laches. On the basis of the record before us, we believe that plaintiff was derelict in seeking an adjudication of his right to a place higher on the eligibility list than that which he had been accorded. We find initially that he did not comply with the civil service regulation which fixed the time within which a request to correct a rating should be made.[7]

choice should the rejected candidate be again certified to him. Since veterans are entitled to preferences, a non-veteran may be passed over by a veteran with a lower qualifying grade and for that reason such a passing over does not constitute a rejection."

[7] Regulation IX, Section 8 of the Emergency Civil Service Regulations of the City of Philadelphia, as amended on June 30, 1952, provides:

"*Section 8. Requests for Correction.*

It was clearly established that plaintiff waited from March 1954 to November 1954, before making any complaint that the grade accorded to him was improper. Whether the aforementioned regulation was waived by the express statement of certain city officials, as plaintiff contends, need not be decided at this time.

Although much of the testimony is contradictory, there is no doubt that on April 29, 1955, and on May 27, 1955, plaintiff was advised by the personnel director that no change would be made in plaintiff's performance rating or in his grade. Notwithstanding this advice, plaintiff waited from April 29, 1955, until June 18, 1956 before filing his complaint in equity. During this period of upwards of 13 months, the eligible list for promotion to captain expired.[8]

Defendants' argument that an action to secure equitable relief in connection with a civil service examination may not be brought after the eligible list has expired, does not appear to be supported by any decision in this jurisdiction. Conceivably, a legislative enactment could effectuate a period of limitations which would be equal to the prescribed term of existence of the eligibility list. No such statute of limitations exists. However, we cannot disregard the life span of the eligible list as a factor in considering the laches charged to plaintiff. Laches cannot be judged in a vacuum. Timeliness must be weighed in the balance of interests affected. Harm to the municipality could result if claims to public office were not promptly adjudicated. Especially does an organization as complex and as sensitive as a metropolitan police force require stabili-

---

"Candidates may request the Personnel Director to correct their ratings at any time during the thirty days immediately following the publication of examination results. Such requests must be made in the form prescribed by the Personnel Director."

[8] The list expired on March 5, 1956.

zation of the status of its personnel at the earliest possible moment: Commonwealth ex rel. Oliver v. Wilkes-Barre, 365 Pa. 24 (1950) ; McMonigle v. Philadelphia, 387 Pa. 341 (1957).

We are not impressed by the various reasons offered by plaintiff to excuse his delay. The credible testimony in the record does not support plaintiff's contention that he was "lulled into a false sense of security" by reason of conferences and conversations with various city officials. It is true that negotiations with these officials consumed many months. If this caused undue delay in plaintiff's decision to enter suit, the burden of responsibility must rest upon plaintiff's strategy rather than upon defendants. The personnel director alone had the authority to amend plaintiff's rating. His final decision that no change would be made was communicated to plaintiff more than 13 months prior to the commencement of this suit. No evidence was adduced to show that the personnel director said or did anything to mislead plaintiff into foregoing his rights during this interval. Any statements on the part of subordinate officials, who possessed no authority to revise plaintiff's standing on the eligibility list, cannot be construed to estop the city from pleading the defense of laches: DeToro v. Pittston, 344 Pa. 254, 261 (1942).

In conclusion, we reiterate what our Supreme Court declared in Glesenkamp v. City of Pittsburgh, 320 Pa. 219, 223 (1935) :

"The orderly administration of government requires that courts assume that persons holding responsible public positions act in good faith, until the contrary is shown. As this Court said in Com. v. Philadelphia, 232 Pa. 5, 81 A. 59, 'we start with the presumption of good faith in the performance of public duties on the part of the commission.' "

Our review of the record discloses no such showing to the contrary.

Finding, as we do, no violation of the Home Rule Charter, or of civil service regulations, nor of fraud or collusion, nor arbitrary conduct on the part of defendants, we reach the following:

### Conclusions of Law

1. The court has jurisdiction of the parties and the subject matter of this litigation.

2. The use by the Personnel Department of the City of Philadelphia of a special performance rating system to compute the grades in the open competitive civil service examination offered to the members of the Police Department of the City of Philadelphia on April 16, 1953, did not violate the provisions of the Philadelphia Home Rule Charter or the civil service regulations promulgated thereunder.

3. The application by the Personnel Department of the City of Philadelphia of a "standard" performance rating to compute plaintiff's grade in the aforementioned examination was proper and reasonable and was not an abuse of discretion.

4. There was no fraud or collusion, or arbitrary or capricious action on the part of any of defendants herein in connection with the aforementioned examination or appointments made pursuant thereto.

5. There was no discrimination against plaintiff by any of defendants herein in connection with appointments made pursuant to the open competitive civil service examination.

6. The filing of a complaint in equity contesting plaintiff's grade in a civil service examination, at a time more than 13 months after he had been informed by the personnel director that his grade would not be changed, constitutes laches.

7. The City of Philadelphia is not estopped from raising the defense of laches by reason of any declarations by its officers or employes relating to a change in plaintiff's grade in the open competitive examination, since such persons were without authority to effectuate a revision.

8. Plaintiff's request for appointment to the rank of police captain is denied. Under section 7-401 (*h*) of the Philadelphia Home Rule Charter, the appointing authority has the right to choose between two candidates whose names are certified to it from the eligible list.