# Resseguie v. Lewisburg Borough

*Charles Wolfe Kalp* and *Louis Cohen*, for plaintiffs.
*A. Thomas Wilson*, for defendants.

CRYTZER, P. J. (41st Judicial District, Specially Presiding), November 30, 1962.—Plaintiff was employed by the Borough of Lewisburg as a police officer on or about December 8, 1958. He remained in the employ of the borough until on or about December 31, 1961, at which time he was dismissed from employment by action of the borough council on December 29, 1961, and later action taken by the borough council on January 8, 1962. Plaintiff requested a hearing before the Lewisburg Civil Service Commission, but was advised by the commission that no charges were submitted to the commission by the Lewisburg Borough Council and that the commission therefore had no issue to hear. The Lewisburg Borough Council, through its solicitor,

further advised plaintiff's counsel that the Borough of Lewisburg had never created its police department by ordinance, that all offices of the Lewisburg Police Department were de facto, and that the borough could therefore remove a police officer without the submission of charges to the civil service commission.

Thereafter, plaintiff filed a complaint, and an amended complaint in mandamus, in which he alleged that he was unlawfully dismissed from employment in the Lewisburg Police Department. The complaint nowhere alleges that the Lewisburg Police Department was created by ordinance. Plaintiff apparently relies on the amendment of the act of the legislature dated and effective April 28, 1961, P. L. 121, sec. 1, 53 PS §46125, to establish his title de jure to the office of policeman, thus qualifying him under the civil service provisions of the pertinent statutes of Pennsylvania.

Defendants filed preliminary objections in the nature of a motion to strike the amended complaint.

The Honorable Paul M. Showalter, President Judge of the Court of Common Pleas of Union County, Seventeenth Judicial District, disqualified himself to preside and the Supreme Court assigned the writer of this opinion to hear and dispose of this case.

### Discussion

Neither counsel cites a reported case interpreting the aforesaid amendment of April 28, 1961, nor has this court found any such assistance. Prior to April 28, 1961, the law was quite clear.

The distinction between a de facto and a de jure officer is set forth in 67 C. J. S. 106, §4, which provides as follows:

"An officer de jure is one who is in all respects legally appointed and qualified to exercise the office; one who is clothed with the full legal right and title to the office; in other words, one who has been legally elected or

appointed to an office, and who has qualified himself to exercise the duties thereof according to the mode prescribed by law. An office created or authorized by the legislature should be treated as de jure until otherwise declared by a competent tribunal. There can be no de jure officer if there is no office or de jure office to be filled or occupied . . ."

It is also to be noted that McQuillin in his work on Municipal Corporations, Vol. 3, 3rd ed., §12.104, at pages 383 and 384, says:

"There can be no de facto officer where there is no corresponding office known to the law, or, as it is sometimes expressed, there can be no officer de facto without an office de jure. In fact, it has been said that, under a constitutional government, there can be no such a thing as an office de facto, as distinguished from an officer de facto . . . One who has been dismissed from an office which does not lawfully exist, in that it was not created by ordinance or other formal action, has no standing to challenge the action . . . dismissing him."

It is important to note that there can be no officer de jure if there is no de jure office to fill. Under the law and the cases controlling in Pennsylvania, as well as throughout the United States, it is granted that a municipality can create an office only through the power granted by the legislature. The controlling legislation which governs the creation of the offices of the police department in boroughs has been held to be the Borough Code of July 10, 1947, P. L. 1621, sec. 23, as amended by the Act of July 19, 1951, P. L. 1026, 53 PS §46006 et seq., which provides substantially as follows:

"It shall be the duty of the borough council . . .

"III. To enact, revise, repeal, and amend, such by-laws, rules, regulations, ordinances and resolutions, not inconsistent with the laws of the Commonwealth,

as it shall deem beneficial to the borough and to provide for the enforcement of the same. *The legislative powers of boroughs, including capital expenditures not payable out of current funds, shall be exercised by or be based on an ordinance.* All other powers shall be exercised by vote of the majority of council present at a meeting, unless otherwise provided . . ."

The substance of the power given to the municipality by the legislature is to the effect that the police department and, therefore, the offices of police must be created by ordinance. It is forthrightly stated in 62 C. J. S. 1093, §569, as follows:

"Where the statute gives the council the right to provide for the employment and appointment of police officers, the council must by appropriate legislation create the offices of policeman and fix their salaries and terms of office, and prescribe their duties and define their powers, and, where so required, a police office must be created by statute or ordinance, and unless so created does not exist. Where the office has not been so created by statute or ordinance, it cannot be established by resolution . . . or by granting the right to appoint police officers, or by appointment, or by the approval of the appointment of one acting as policeman, or by continuance of such a person in service, or by declaring him an officer of the city . . ."

The proposition advanced as recited in 62 C. J. S. 1093, §569, quoted above, has been followed by the courts of Pennsylvania: Templeton Appeal, 399 Pa. 10, 159 A. 2d 725 (1960) ; Detoro v. City of Pittston, 344 Pa. 254, 25 A. 2d 299 (1942) ; Healey v. Jones, 152 Pa. Superior Ct. 18, 30 A. 2d 732 (1943) ; Miles v. Borough of Houston, 3 D. & C. 2d 793 (1955) ; Shady v. Wyoming Borough, 78 D. & C. 584 (1951).

Further powers given to the borough in establishing a police department will be found in the act of the legislature of May 4, 1927, P. L. 519, art. XI, sec.

1125; June 24, 1939, P. L. 289, sec. 3; July 10, 1947, P. L. 1621, sec. 36, 53 PS §46125. This legislation provides for the appointment and removal or suspension of policemen, setting forth the powers of the police and their control. It also provides that the borough may by ordinance establish a police department.

There is no question but that defendants and their very able counsel relied upon these principles and especially upon the Templeton decision, supra, handed down March 22, 1960.

Then along came the amendment of April 28, 1961. This amendment was aided and possibly inspired by the dissenting opinion of Justice Musmanno in the Templeton case with a probable assist from the police fraternal organizations of the Commonwealth.

The said amendment added to the Act of May 4, 1927, P. L. 519, the following:

"*In any case in which a borough has heretofore appointed policemen* or established a police department by lawful action of council but *not by or pursuant to an ordinance* regularly enacted, such action shall be deemed to have been a valid exercise of the legislative power of the borough for all purposes the same as though an ordinance had been enacted, and *all policemen appointed thereunder shall occupy the same status as in the case of policemen appointed under authority of an ordinance.*" (Italics supplied.)

Is this amendment retroactive so as to entitle plaintiff to the procedures and benefits of the Civil Service Law of the Commonwealth?

The Statutory Construction Act provides specifically that no law shall be construed to be retroactive unless clearly and manifestly so intended to be. The act of the legislature of May 28, 1937, P. L. 1019, art. IV, sec. 56, 46 PS §556, provides as follows:

"No law shall be construed to be retroactive unless clearly and manifestly so intended by the Legislature."

It is also the controlling case law of Pennsylvania that where the language of a statute is general and might be given both retroactive and prospective operation, it will be held to be prospective only: U. S. ex rel. Forino v. Garfinkel, 69 F. Supp. 846, 166 F. 2d 887 (1947) ; Sawdey Liquor License Case, 369 Pa. 19, 85 A. 2d 28 (1951) ; Smith v. Fenner, 399 Pa. 633, 161 A. 2d 150 (1960) ; St. Joseph Lead Company and Koppers Company, Inc. v. Potter Township, 398 Pa. 361, 157 A. 2d 638 (1959).

It is difficult to suggest what language the legislature could have used to more specifically and more clearly manifest its intent to make this amendment retroactive.

Thus the cases prior to this amendment, such as the Templeton Appeal, supra, of March 22, 1960, are not controlling so far as the current case is concerned. On the point involved herein, the law has been amended and changed by the legislature.

Defendants raise the question whether the retroactive effect would not be bad policy, leading to the retrial of the Templeton class cases. This is a possibility but where the legislature has clearly stated its intent by statute the courts cannot capriciously disregard it. The current case differs in its facts from the aforesaid cases. Here the amendment became effective April 28, 1961, and plaintiff was discharged more than eight months thereafter.

Is the amendment Constitutional?

Here is a serious possibility, in fact, a reality where vested rights exist under a contract. Then a retroactive amendment is passed changing those rights.

The Summary of Pennsylvania Jurisprudence, Constitutional Law, §284, page 296, states:

"§284. Qualifications where state exercised one of its sovereign powers—Police powers.

"All contracts, both public and private, are deemed to be made subject to a paramount right of the state to exercise its legitimate police powers for the protection of its inhabitants. Private persons cannot by entering into a contract fetter the state to prevent it from passing appropriate police measures necessary for the safety and welfare of its inhabitants. Consequently, the state may constitutionally pass police measures notwithstanding the fact that their effect is to materially change or abrogate private rights under contracts previously entered into. Since the obligation is deemed subject to the reservation of such power in the state, its exercise cannot be construed as an impairment of such obligation. 12 Am Jur 54, Constitutional Law §421."

But does this encompass a retroactive amendment making ineligible policemen eligible for civil service? Is this not a stretching of the doctrine of police power of the State? Could it not be more detrimental than beneficial to the public's welfare? Will it not encourage poorly qualified policemen to make permanent what was intended as temporary employment? Or will it free qualified and honest officers from improper retaliation and thus encourage better enforcement and public protection?

We may philosophize, but the Supreme Court of Pennsylvania has spoken. In Philadelphia Civil Service Commission v. Eckles, 376 Pa. 421, 103 A. 2d 761, appellant was demoted under the Philadelphia Home Rule Charter which became effective on January 2, 1952. He had been promoted prior to this effective date and alleged that the new charter was prospective and could not change his status fixed prior thereto; such demotion would constitute a retroactive application of the charter and would be unconstitutional.

Justice Chidsey, speaking for the Supreme Court at page 426, 427, held:

"Appellant's able counsel earnestly argues to the contrary, claiming that the new Home Rule Charter is prospective in operation and can be given no retroactive effect as to appellant who was promoted prior to its effective date. Counsel concedes as he must the power of legislative bodies to amend statutorily created rights affecting the conditions of public employment even although changes made will affect present as well as future employes. See Teachers' Tenure Act Cases, 329 Pa.213, 197 A. 344; Boyle et al. v. Philadelphia et al., 338 Pa. 129, 12 A. 2d 43; Duffy v. Cooke, 239 Pa. 427, 86 A. 1076. The contention made is that the matter is one of legislative intent and that the provisions of the new Home Rule Charter indicate that it was not intended to apply to appointments or promotions made prior to the Charter's effective date. The use of the word 'shall' in many portions of the Charter is pointed to as connoting future operative effect and cases are cited that hold the legislative intention to give enactments retroactive effect must be clearly manifest.

"We are satisfied that the new Charter meets this test. Its vital objective was to provide a new uniform law applicable to all municipal employes, present and future . . . the Charter provided that *all officers and employes* of the city, all departments, all independent boards and commissions and all departmental boards and commissions should, with certain exceptions, be under civil service. . . . On January 7, 1952, therefore, *all* city officers and employes became immediately subject to these provisions of the Charter. . . ."

Act of April 28, 1961, specifically states:

"In *any* case in which a borough has *heretofore* appointed policemen . . . *all* policemen appointed thereunder shall occupy the same status as in the case of policemen appointed under the authority of an ordinance." (Italics supplied.)

## Conclusions

1. The amendment of April 28, 1961, P. L. 121, clearly expresses the intent of the legislature that it shall apply not only to future employes but also to those employed on its effective date.

2. The said amendment is not unconstitutional.

3. Under the facts plead by plaintiff he would be entitled to the procedures set forth in the Civil Service Law. However, since defendants' motion to strike was in the nature of a preliminary objection, defendants are entitled to file an answer.

## Decree

And now, November 30, 1962, in accordance with Pennsylvania Rule of Civil Procedure 1098 judgment will be entered for plaintiff ordering him to be reinstated and back wages, less any earnings he has received from other employment, be paid him from the date of his dismissal without pay from the Borough of Lewisburg, unless within 20 days from the filing of this decree defendants either: (1) File an answer on the merits or; (2) submit their reasons for the discharge of defendant to the Civil Service Commission of the Borough of Lewisburg in the form set forth in the Civil Service Law of Pennsylvania.