## L. HUBER ET AL. v. G. W. CROSLAND ET AL.

APPEAL BY DEFENDANTS FROM THE COURT OF COMMON PLEAS OF SCHUYLKILL COUNTY.

Argued February 18, 1891—Decided March 9, 1891.

(a) A grantor conveyed land to his mother, Catharine L. Crosland, "with the reversions, remainders," etc., for her support and maintenance: "and should there be any remainder thereafter, the same to revert to her legal heirs, subject to the will and pleasure of my father, John M. Crosland, in the premises, as may be by him defined hereafter."

(b) The deed constituted the father the grantee's "sole trustee and attorney in fact, during his natural life, with full power to sell, rent, lease and devise to third parties for and in her name, and also to receive and receipt for any and all moneys due to or to become due from said estate," and to pay demands against the same:

1. In such case, by said conveyance the entire beneficial interest in the premises was conveyed to the father and mother, and a sheriff's sale of the land on a judgment obtained on a mortgage executed jointly by

Statement of Facts.

them, passed a good title in fee-simple to the purchasers, against the heirs at law of the mother.

2. Creditors have rights as well as debtors; and creditors, each claiming the superior lien upon real estate sold at sheriff's sale, may unite in purchasing the property for their joint benefit, for the purpose of preventing subsequent litigation between themselves in the distribution of the proceeds.

Before PAXSON, C. J., STERRETT, WILLIAMS, McCOLLUM and MITCHELL, JJ.

No. 145 January Term 1891, Sup. Ct.; court below, No. 342 November Term 1884, C. P.

On November 8, 1884, "Levi Huber and Robert C. Green, trustees, in the order named, for the Equitable Saving Fund & Building Association and the Mutual Saving Fund & Building Association," brought ejectment against George W. Crosland and Emily Crosland, for a lot of ground on the east side of Centre street, in the borough of Pottsville. The defendants pleaded, not guilty.

At the trial on October 1, 1890, the plaintiffs showed title by deed from John Rausch, sheriff, to George W. Crosland, dated December 19, 1863, the property being sold as the property of John M. Crosland; and followed with the deed of George W. Crosland, written on the back of the foregoing and dated October 25, 1869, as follows:

"Assignment of Deed and Conditions of Transfer of the within described Real Estate and Appurtenances.

"Know all Men by these Presents: That I, George W. Crosland, of the city of Philadelphia, the grantor, being unmarried, for and in consideration of the natural affection due my parents and the sum of eight hundred and sixty dollars paid by my mother, Catharine L. Crosland, from her own and separate and individual income in divers instalments at different dates previously, and the sum of one dollar to me in hand paid at and before the sealing and delivery hereof, the receipt whereof is hereby acknowledged, do grant, transfer, assign and set over unto the said Catharine L. Crosland the within described real estate with all and singular my right, title, interest, improvements, appurtenances and franchises whatsoever thereunto belonging, or in anywise appertaining thereto, together with all

reversions, remainders, rents, issues and profits thereof, from this date, for her comfortable support and maintenance, and should there be any remainder thereafter the same to revert to her legal heirs, subject to the will and pleasure of my father, John M. Crosland, in the premises, as may be by him defined hereafter. And, without in anywise abrogating, annulling or impairing my previous power of attorney to him, dated January 29, 1864, and attached hereto, hereby constitute the said John M. Crosland in like manner her sole trustee and attorney in fact, during his natural life, with full power to sell, rent, lease and devise to third parties for and in her name, and also to receive and receipt for any and all monies due to or to become due from said estate, and to pay any and all just demands against the same that may be now due or that shall hereafter become due for taxes, repairing, etc., etc., to the end that all shall be equitably done and the said Catharine L. Crosland be comfortably maintained and provided for out of the said estate, according to the true intent and meaning of the foregoing authority vested in the said parties.

"In witness whereof, . . . . ."

The foregoing assignment or deed was duly acknowledged by the grantor therein, on the day of its date, and recorded.

The case then showed that, upon stock in the Equitable Saving Fund & Building Association in the name of John M. Crosland, a loan of $3,000 was made and secured by a bond and mortgage upon the premises in dispute, executed to the association by John M. and Catharine L. Crosland, dated December 30, 1872, and duly recorded. This mortgage made no reference to the title under which the mortgagors held the premises. On April 29, 1874, John M. and Catharine L. Crosland executed another bond and mortgage for $2,000 upon the same premises to the same association, to secure a like loan of that amount.

On August 31, 1874, George W. Crosland, in consideration of the sum of one dollar, etc., executed a second deed for the premises in dispute to John M. Crosland, duly recorded; and afterward, upon stock in the Mutual Saving Fund & Building Association in the name of John M. Crosland, two loans, for $3,000 and $2,000 respectively, were made by said association, and secured by bonds and mortgages upon the premises in dis-

pute, executed by John M. and Catharine L. Crosland, dated August 26, 1874, and duly recorded.   These mortgages recited the title of John M. Crosland as derived from the deed of George W. Crosland, dated August 31, 1874.

Catharine L. Crosland died on October 13, 1879.

On September 1, 1883, upon writs of levari facias in favor of the Equitable association, from judgments on its mortgages, and upon writs of fieri facias in favor of the Mutual association from judgments against John M. Crosland, alone, upon its bonds, the premises in dispute were sold at sheriff's sale and conveyed to the two associations which subsequently brought this suit.   George W. Crosland and Emily Crosland (afterwards Pawlings), were two of the heirs at law of Catharine L. Crosland in possession.

There was evidence that, at the said sheriff's sale, the two associations bid against each other upon the property, until it was run up to $5,100; that the bids were withdrawn, and that one of the associations then bid for both, when the property was knocked down at $250, although worth at least $7,000.   But, on the part of the plaintiffs, there was evidence that, before the sheriff's sale, a doubt existing as to the state of the title, the two associations had agreed to buy the property jointly for their joint interest; that at the sale it was not known that the counsel of the two associations were bidding against each other until the bid of $5,100 was made, and on its discovery, the bids were then withdrawn and the sale started up again, when the property was finally knocked down as stated.

At the close of the testimony, the court, GREEN, J., charged the jury:

Gentlemen of the jury: There is only one question in this case that can be submitted to the jury, and that is the question as to the bona fides of this sale.

[The testimony of Mr. Crosland, on the one side, would seem to show that there had been competitive bidding between Messrs. Healy and Henning, and that then, by reason of some agreement made between them at that time, both bids were withdrawn and the property put up again and sold for the sum of $250, instead of $5,100, the amount it had been run up to before   On the other side, the testimony of Messrs. Henning

Charge of Court below.

and Healy, which is uncontradicted, shows that there was no combination between them, but that it was a mistake that there was any competitive bidding between them at all, because that was not intended.   They testified that a previous agreement had been made between them, by which these two saving funds, having these claims against this property, would come together and assert their claim to the property, after purchasing it at sheriff's sale, owing to the fact that a very great confusion of title had arisen on account of the different conveyances of this property, made by the Croslands.   You have offered a very peculiar deed, made in 1869, by which Geo. W. Crosland conveyed this title to Mrs. Crosland, with quite a number of queer conditions in it.   That raised the question as to the kind of interest Catharine Crosland had in this property, and also what interest John M. Crosland had in the property; and whether Catharine Crosland only took a life-estate in the property, and whether at her death the property went to all the heirs, the children of Catharine Crosland.   These are questions that have arisen in the case, and we say to you that these parties would have a right to make an agreement for the purpose of preventing subsequent litigation between themselves, arising out of the confusion of title that had been created in regard to this property, and that your verdict should be in favor of the plaintiffs.] [7]

Several questions of law are submitted here which we will reserve.   The question as to the effect of this deed and what title Mrs. Crosland had, and what title John M. Crosland had in this property, will be reserved for future consideration under a motion for a new trial.   For the present we say to you that the verdict of the jury in this case should be for the plaintiffs.

The plaintiffs request the court to charge the jury :

1.   That the deed of October 25, 1869, from George W. Crosland to Catharine L. Crosland, conveyed to said Catharine L. Crosland a title to the premises in dispute, subject to the will and pleasure of John M. Crosland, who thereby acquired no title to the same; and when the said John M. Crosland joined with the said Catharine L. Crosland in the mortgages to the Equitable saving fund, in evidence, conveying the premises in dispute to said saving fund in fee-simple, as security for the payment of the several sums specified in said mortgages, he

Charge of Court below.

thereby expressed his will and pleasure, the said saving fund acquired a lien upon the premises in fee-simple, and the sale on said mortgage passed a title to the premises in dispute to the plaintiffs in fee-simple.

Answer: Affirmed.[1]

2. That the deed of October 25, 1869, from George W. Crosland to Catharine L. Crosland, conveyed to said Catharine L. Crosland a title to the said premises in dispute, subject to the will and pleasure of John M. Crosland, who thereby acquired no title to the same ; and when the said John M. Crosland accepted the conveyance dated August 31, 1874, from George W. Crosland and wife, of the premises in dispute, and subsequently joined with the said Catharine L. Crosland in the mortgages of the premises in dispute to the Mutual saving fund, he thereby expressed his will and pleasure, the said saving fund acquired a lien upon the premises in dispute in fee-simple by the entry of the accompanying judgment bonds, and a sale thereon passed the title to the premises in dispute to the plaintiffs in fee-simple.

Answer: Affirmed.[2]

The following points are submitted by the defendants :

1. That if the Mutual saving fund and Equitable saving fund had separate liens, and each claimed to have the better and superior liens against the premises in controversy, and each had taken out execution for the sale of the premises in dispute, and prior to said sale the two associations entered into an agreement by which they would purchase the property at sheriff's sale jointly, the effect of which agreement was that they did not bid against each other, but the bidding at the sale should be done by one counsel, such a combination was fraudulent as to the defendants and void, and the defendants are entitled to a verdict.

Answer: Refused.[3]

2. If the jury believe that the counsel for the plaintiffs respectively, the Equitable and Mutual saving funds, attended the sheriff's sale of the premises in dispute and bid adversely against each other until the sum of $5,100 had been bid, when the sale was stopped and the attorneys withdrew their bids, and then had the property put up again and bid in by the two associations jointly for $250, such a state of facts will render the sale fraudulent and void and against public policy, and the verdict of the jury should be for the defendants.

Opinion of Court below.

Answer : Refused.[4]

3. That if Catharine L. Crosland took but a life-interest under the deed from George W. Crosland to her, then the sheriff's sale and sheriff's deed to the plaintiffs conveyed no title, as her estate had been terminated by her death on October 13, 1879.

Answer : Refused.[5]

4. That the deed from George W. Crosland to Catharine L. Crosland created a trust for the life of Catharine L. Crosland; said trust was an active one, and the remainder vested in her heirs immediately upon the execution of the aforesaid conveyance ; that under said deed Catharine L. Crosland had no power to convey or mortgage her estate in said premises, and, as the mortgages given to the Equitable saving fund, as well as the judgments given to the Mutual saving fund, were not executed under the powers conferred in and by said deed, no title passed to the plaintiffs by the sheriff's sale and the sheriff's deed in evidence, and the verdict should be for the defendants.

Answer : Refused.[6]

—The jury having returned a verdict for the plaintiffs as directed, the defendants moved for judgment for the defendants, non obstante veredicto, and for a new trial; rule granted.

After argument of the rule, the court, GREEN, J., on November 24, 1890, filed the following opinion :

The court, in this case, directed a verdict in favor of the plaintiffs, and at the same time entered the above rule to show cause why judgment should not be entered in favor of the defendants on the point reserved in this case.

The plaintiffs' claim of title is based upon a sheriff's sale of the property in dispute as the property of John M. Crosland and his wife, Catharine L. Crosland, and purchased by the plaintiffs. The saving funds had originally held mortgages against the property for loans purchased by Crosland, to secure which the mortgages had been given and on which judgment had been obtained, execution issued, and the property sold by the sheriff to the plaintiffs. At the time of the sale, Catharine L. Crosland was dead, and her husband was substituted as her administrator.

Upon the trial of the cause, the defendants contended that by the terms of the deed of October 25, 1869, from George W.

Opinion of Court below.

Crosland to Catharine L. Crosland, she acquired but a life-interest in the property, and that after her death it was to revert to her legal heirs; that John M. Crosland never did acquire any interest in the property by the subsequent deed to him from George W. Crosland dated August 31, 1874, all the right, and title of George W. Crosland having been already conveyed by his previous deed to his mother; that the mortgages of the saving funds were therefore only upon the life-estate of Catharine Crosland, and she being dead at the time of the sale, the plaintiffs acquired no title whatever to the property. On the other hand, the plaintiffs contended that under the terms of the deed from George Crosland to his mother, with its various conditions and restrictions, its powers and its evident object, the interest of Mrs. Crosland, in conjunction with the powers and authorities given to her husband, was much greater than a life-estate in the property, and gave them a right to execute a mortgage which would bind the fee-simple. The proper construction to be given to the deed from George W. Crosland to his mother, must decide the questions in dispute between the parties. It is a wonderful document, drawn up by a non-professional gentleman, and with a familiar use of legal phraseology which indicates care and a fixed purpose. It is unique, and well deserves a place among the curiosities of legal literature.*

The questions at issue have been elaborately argued by the counsel on both sides, and numberless authorities have been cited, which serve either to illuminate or to obscure the construction to be placed upon this document. Without answering at length the many authorities which have been cited, we think a critical analysis of the different provisions of the deed will tend to throw more light upon it than any other method of procedure.

The deed, for the consideration of natural affection for his parents, and of $860, paid at divers times by his mother, grants, transfers, assigns and sets over unto Catharine L. Crosland the property in dispute, " for her comfortable support and maintenance, and should there be any remainder thereafter, the same to revert to her legal heirs, subject to the will and pleasure of

---

* See Mazurie's Est., 132 Pa. 157.

Opinion of Court below.

my father, John M. Crosland, in the premises as may be by him defined hereafter." It is contended that this phraseology gives but a life-estate to the mother, with remainder over to her legal heirs, and that upon her death the property became vested in the heirs.

To what extent this phraseology is to be controlled by the other clauses in the deed, we leave for discussion hereafter; but it is to be remarked, in the first place, that no estate for life is created, eo nomine; it is a mere inference that she has but a life-estate. In the next place, the property is granted to her absolutely for her support and maintenance, and if anything should happen to be left, it was to revert to her legal heirs. This evidently contemplated that Mrs. Crosland was to have more than the mere use or income of the property during life. The whole of the property, principal as well as income, might be exhausted for the benefit of Mrs. Crosland, so that these legal heirs might receive nothing; and in the third place, the right of the heirs to receive anything out of the remainder was to be subject to the will and pleasure of the father, John M. Crosland. This made the interest of the heirs a very uncertain remainder, liable to be extinguished at any time at the mere whim and pleasure of the father.

These are considerations to be borne in mind in attempting to define the extent of Mrs. Crosland's interest in the property, and also the power and authority given to John M. Crosland over it. But the deed further stipulates that the conveyance to Catharine Crosland is made "without in any wise abrogating, annulling or impairing my previous power of attorney to him, dated January 29, 1864, and attached hereto, hereby constitute the said John M. Crosland in like manner her sole trustee and attorney in fact, during his natural life, with full power to sell, rent, lease and devise for her and in her name, and also to receive and receipt for any and all monies due or to become due from said estate, and to pay any and all just demands against the same that may be now due or that shall hereafter become due for taxes, repairing, etc., etc., to the end that all shall be equitably done, and the said Catharine L. Crosland be comfortably maintained and provided for out of said estate, according to the true intent and meaning of the foregoing authority vested in the said parties."

If we examine this remarkable document from what is contained within its four corners, giving to all its various clauses their due weight, its purpose and objects become readily apparent. Whilst the ostensible purpose was to provide a comfortable maintenance for the wife, yet the real purpose was to give the husband full control and authority; the provision for the wife became subordinate to this evident intention, in the drawing up and execution of the instrument. I think it is clear, that, whilst the legal title was put into the wife either for support or safety, yet the dominant purpose was to put into the husband all the benefits and advantages of real ownership, without any of its responsibilities and liabilities; and it becomes a question from the powers granted, whether the wife does not hold the legal title in trust for the benefit of the husband, instead of the husband being the trustee for the wife, as the professed intention of the writing plainly sets forth.

Whilst the interests of the wife and specially of the remaindermen would seem to be indefinite and hard to define, as we have already touched upon, it is remarkable how carefully the interests of the husband, who wrote this document, have been guarded and defined, not only as against the remainders, but even as against the chief beneficiary, his wife. He is to have the sole right to sell, rent and lease the property; to repair it; to receive all the income from it and to retain it, and apparently without accounting to her for it, provided he has fulfilled his marital obligation of comfortably maintaining her; and upon her death, then he has the rare privilege of devising the property " for her and in her name." And all this power and authority is to continue during " his natural life," even after the death of the wife. All this savors of ownership rather than of trusteeship. Nor can we accept the suggestion that it was a clerical mistake of the scrivener, that is, of the trustee, to use the word " devise " instead of " demise," and that he really intended, demise. There is too evident an attempt to swell the powers of the trustee, to suppose he would use words of lesser signification. He was searching after words which would give the largest powers possible.

As to the remainder-men, they are in a most pitiable plight. Instead of having a vested remainder in the property, their interests seem to be of the most uncertain character. They

are to have the remainder, provided, in the first place, that there is any; in the next place, that the father does not sell the property or " devise it to third parties," and provided it is his will and pleasure to let them have it; three very uncertain events. Instead of a vested remainder, this becomes then a contingent remainder. And, in view of the fact that it is made to depend upon three or more contingencies, it may well be called a triple contingent remainder, a thing, I imagine very rarely met with. As all these uncertainties depend upon the acts and will of John M. Crosland, we may well inquire whether he has not himself, in point of fact, been constituted the remainder-man, instead of the heirs of Catharine L. Crosland. It is fortunate perhaps, in view of so many contingencies, that the husband has been constituted only the trustee of the wife, and not of the remainders, thereby relieving him from any possible imputation of having been unfaithful to the trust reposed in him.

If we accept this as the true meaning of this conveyance and that its dominant purpose was as I have pointed out, then its construction becomes easy, and must be adopted, unless in conflict with some technical rules of law as to the manner in which the powers granted have been executed. It is easy to see that John M. Crosland, having the right to sell the property, had also the right to mortgage it, for the greater includes the lesser right; and it is also easy to see that by such an act the interest of the heirs would be completely extinguished. His right to extinguish depends upon no contingency. They may not object that the father had sold or mortgaged the property, and put the money in his pocket and has not accounted for it. He is not required to account to them for it. He is authorized to retain it for the purpose of giving comfortable support and maintenance to the wife. The wife alone may complain of the want of support, but she cannot demand the money. This, however, is not a question to be decided here.

The principal matter of contention remaining, is the objection urged by the defendants, that the mortgage does not show that it was executed under the power given in the deed; that the mortgage was executed by John M. Crosland and wife, individually, and not by John M. Crosland, as trustee " for and in her name;" and that, as the wife had a life-interest in

Opinion of Court below.

the property, a mortgage executed by her must be intended as a mortgage of that interest, in which her husband, as husband, was obliged to join in order to make it valid; that, therefore, the mortgage could not be supposed or necessarily inferred to have been made in pursuance of the power granted to the trustee, in the absence of words to that effect.

A great many authorities have been cited, both English and American, upon this question, which it would be useless to discuss, for the reason that the law seems to be well settled, and does not admit of much doubt. Is there sufficient in this case to show that this mortgage was executed under the power granted to the trustee, or is it to be referred to the mortgage of some other interest which the parties had in the premises; that is, to a mortgage of the life-interest?

In Allison v. Kurtz, 2 W. 185, a leading case in Pennsylvania, the principle is laid down that "powers executed by deed or will, need not recite or refer to the instrument creating the power, if the act done be such as cannot take effect but by virtue of the power. Hence a conveyance by one who was an executor, with full power to sell and convey, shall be construed to be an execution of the power contained in the will, although that power be not recited." In the opinion of Justice SERGEANT, it is said "it has been decided so long ago as Clere's Case, 6 Rep. 18, that if one having only a power to dispose of lands, but no interest in them, make a disposition of them without reference to the power, they shall be considered as passing by virtue of the power; because otherwise the disposition of them would be inoperative and void. The law, which mainly regards the design and object of the parties, will not suppose them to do a vain and useless thing, but if there be any way in which their design can take effect, it shall be deemed to operate in that way." To the same effect is Powell on Powers, 111, 114, and cases cited.

"The committee of a lunatic, authorized by act of assembly to sell the lunatic's land by letter of attorney, empowered an attorney in fact to sell the land. The attorney conveyed the land by deed in his own name, without referring to the power, and as if it were his own. Held, that the conveyance was to be deemed an execution of the power and passed the lunatic's title:" Henby v. Warner, 51 Pa. 276. In Jones v. Wood, 16

Pa. 42, the principle ruling these questions seems to be very clearly stated. "The distinction settled by the decisions seems to be this : When the donee of a power to sell land possesses, also, an interest in the subject of the power, a conveyance by him, without actual reference to the power, will not be deemed an execution of it, except there be evidence of an intention to execute it, or, at least, in the face of evidence disproving such an intention ; but, where the donee has no estate in the premises, and his conveyance can only be made operative by treating it as an execution of the power to sell, it will be so considered."

Applying these principles to the case now before the court, it is to be observed that the mortgages under which the plaintiffs claim are mortgages, not of the life-estate of Mrs. Crosland, but of the entire fee. Such mortgages could only be given in pursuance of the power vested by the deed in John M. Crosland. It would be a violent and unwarranted assumption to suppose that the parties by mistake mortgaged the fee instead of the life-estate. There is nothing to show it. It would be a much more violent assumption to suppose that the mortgagees would have accepted such a security.

It is also claimed that John M. Crosland was a mere trustee, having no interest in the land, and that he joined with his wife in the instrument, in order to enable her to mortgage her life-interest. But she had no right to mortgage anything, and calling in her husband, as husband, would not aid her. Her right to sell or mortgage or do anything was completely taken away by the deed. We cannot suppose he would be called in to do a vain and useless thing. His act in executing the mortgage can therefore be referred only to the power granted to him in the deed of conveyance from the son to the mother. For these reasons, we think that the mortgages were executed in pursuance of the power and that they can be referred to no other source.

In the view we take of this case, we have not deemed it necessary to discuss the question whether the grant to the wife and remainder to the heirs, is within the rule in Shelley's Case. It is claimed it is not, because it is a trust for a feme-covert and also a trust-estate. But it may well be questioned whether such a trust as this is shown to be, is not within the

Arguments.

operation of the rule.   The trust was not raised for the pur-
pose of preserving any estate to the heirs,   He is to act only
as trustee for the wife, and the powers conferred upon him are
antagonistic to the interest of the heirs.   Why should such a
trust-estate as this interfere with the operation of the rule ?
We are free to confess that we have not examined this ques-·
tion, because it was not necessary to the decision of the case,
and therefore venture upon no positive opinion.

Upon the trial of the cause, a question of fact as to an al-
leged fraud at the sheriff's sale, which was claimed injuriously
affected the sale of the property, was about to be submitted to
the jury for their determination, but upon the statement of the
law upon the subject as the court proposed to rule it, at the
instance and request of the counsel of the defendants the
jury was relieved from passing upon the question of fact.
This made every question that arose in the case a question of
law, to be passed upon and ruled by the court.   There was no
longer anything for the jury to try.

We have discussed this case at greater length than was per-
haps necessary, but the subject became interesting, and the
conveyance from the son to the mother with all its extraor-
dinary clauses and conditions, its powers and its apparent and
real purposes, was so unique and exceptional in character as
to excite the interest and curiosity of all those who have to
deal, ordinarily, only with the customary legal phraseology of
deeds and other conveyances.

For the reasons we have given, the rule for judgment for the
defendants, non obstante veredicto, must be discharged and the
motion for a new trial overruled, and it is so ordered.

—Judgment having been entered on the verdict, the defend-
ants took this appeal, assigning for error:

1, 2. The answers to the plaintiffs' points.[1] [2]
3–6. The answers to the defendants' points.[3] [to] [6]
7. The portion of the charge embraced in [ ] [7]


*Mr. James Ryon* (with him *Mr. John W. Ryon* and *Mr.
George W. Ryon*), for the appellants.

Counsel cited, as to the character of the estate granted by
the deed of October 25, 1889 : Bingham's App., 64 Pa. 345 ;
Lancaster v. Dolan, 1 R. 231 ; Penna. Ins. Co. v. Foster, 35

Pa. 134 ; Thomas v. Folwell, 2 Wh. 11 ; Wallace v. Coston, 9 W. 137 ; Wright v. Brown, 44 Pa. 224 ; McMullin v. Beatty, 56 Pa. 389 ; MacConnell v. Lindsay, 131 Pa. 176.   As to the clause, " subject to the will and pleasure of John M. Crosland," etc. : Bassett v. Hawk, 118 Pa. 105 ; Kelso v. Dickey, 7 W. & S. 279 ; Chess's App., 87 Pa. 362 ; McClure's App., 72 Pa. 414 ; Horwitz v. Norris, 49 Pa. 217 ; s. c. 60 Pa. 261 ; Wickersham v. Savage, 58 Pa. 365.   As to the power to sell : Peterson's Est., 88 Pa. 397 ; Slifer v. Beates, 9 S. & R. 179 ; Porter v. Turner, 3 S. & R. 115 ; Wetherill v. Wetherill, 18 Pa. 270.

*Mr. James M. Healy, Mr. D. C. Henning, Mr. E. D. Smith,* and *Mr. Guy E. Farquhar,* for the appellees, were not heard.

That the law presumes a purchase at a public sale to have been made in good faith, the brief filed cited : Barton v. Hunter, 101 Pa. 411 ; and a combination of creditors as bidders is not of itself corrupt : Smull v. Jones, 1 W. & S. 128 ; s. c. 6 W. & S. 122 ; Phippen v. Stickney, 3 Metc. 384 ; Kearney v. Taylor, 15 How. 494.   As to the estate conveyed by the deed : Roberjot v. Mazurie, 14 S. & R. 45 ; Tyler v. Moore, 42 Pa. 374 ; Ringe v. Kellner, 99 Pa. 460 ; Todd's App., 24 Pa. 431 ; Richardson v. Aiken, 104 Pa. 567 ; Wright v. Brown, 44 Pa. 224 ; Willard v. Davis, 3 Penny. 86 ; Jones v. Wood, 16 Pa. 42 ; Henby v. Warner, 51 Pa. 276 ; Allison v. Kurtz, 2 W. 185.

PER CURIAM :

While the deed from George W. Crosland to Catharine L. Crosland is peculiar in its phraseology, we are of opinion that the entire beneficial interest in the property embraced in the deed remained in the parties thereto.   That this was the construction placed upon it by the parties themselves, is manifest from the fact of their joint execution of a mortgage in fee of the premises to the building association.   If they did not think they were the owners in fee, they perpetrated a fraud upon the latter.   We are unwilling to impute such an act to them, but prefer to believe that they executed the mortgage in good faith, as owners of the fee.   We think they were right in their construction of the deed.   It follows that the mortgage was good as to the entire interest, and the purchasers under it took a good title.

Statement of Facts.

We find no error in the answer to the defendant's first point. The two savings funds, having each a lien on the mortgaged premises, had the right to purchase the property for their joint benefit, and were not obliged to bid against each other. Creditors have rights as well as debtors.

Judgment affirmed.