**James C. RODDEY, in his official capacity as Chief Executive of the County of Allegheny, Pennsylvania, Appellant**

v.

**COUNTY COUNCIL OF THE COUNTY OF ALLEGHENY, Pennsylvania and Peter R. Defazio, in his official Capacity as Sheriff of Allegheny County, Pennsylvania.**

Commonwealth Court of Pennsylvania.

Argued Dec. 9, 2003.
Decided Feb. 5, 2004.

---

**5.** Although attorney's fees are awarded under both Sections 9(d.1)(3) and (4), only one recovery is possible.

Charles P. McCullough, Pittsburgh, for appellant.

John F. Cambest, Pittsburgh, for appellee, County Council of the County of Allegheny.

Anthony M. Mariani, Pittsburgh, for appellee, P. Defazio.

BEFORE: COLINS, President Judge, and McGINLEY, Judge, SMITH–RIBNER, Judge, PELLEGRINI, Judge, FRIEDMAN, Judge, COHN, Judge, and SIMPSON, Judge.

OPINION BY President Judge COLINS.

James C. Roddey, the elected Chief Executive of the County of Allegheny, appeals two orders of the Court of Common Pleas of Allegheny County. The first order dismissed Roddey's complaint against the County Council of the County of Allegheny and the County's Sheriff Peter Defazio, which complaint sought a declaratory judgment that he has the power to exercise a line item veto by reducing specific line-item allocations. The second order denied Roddey's Motion for Reconsideration of the first order. Roddey has also filed an application to reinstate the automatic supersedeas that arose as a result of Roddey's appeal on the merits.[1]

Roddey, County Council, and Defazio submitted a stipulation of facts that reveals the following. On December 3, 2002, County Council adopted three resolutions, Bill No. 02–1202 (operating budget), No. 02–1203 (capital budget), and No. 02–1204 (grants, special accounts, and agency fund budget), all proposed for the 2003 fiscal year. On December 12, 2002, Roddey exercised his power under Article VII, Section 5 of the Home Rule Charter, 302 Pa.Code § 1.7–705, by vetoing certain items in all three budget resolutions. Section 5, captioned "item veto," provides:

Upon adoption or amendment of the annual operating and capital budgets by County Council, the budgets shall be delivered within three days to the Chief Executive who, within seven days thereafter, may veto any item. If the Chief Executive vetoes any item, the Chief Executive shall advise County Council in writing of the reason for the veto. County Council may override the veto of the Chief Executive within seven days

by an affirmative vote of at least two-thirds of the seated Members.

With respect to the grants, special accounts, and agency fund budget, Roddey eliminated the entire budgetary allocation for "Sheriff's Special Revenue Fund." However, and of significance here, Roddey, in exercising his veto power with regard to specific items in the operating and capital budget resolutions, did not strike those items in their entirety, but rather struck the dollar amount allocated for certain items, indicating to the side of the item the amount he rejected by veto and the amount he approved. Thus, he used his veto power to reduce allocations to certain items, what we will refer to here as a reduction veto.

We note initially, that Section 5 provides only for veto power over operating and capital budgets, and does not specifically provide for veto power over a grants, special accounts, and agency fund budget resolution. Additionally, Article VII, Section 4(a) directs Council to adopt **balanced** operating and capital budgets for the next fiscal year no fewer than twenty-five days before the end of the present fiscal year. 302 Pa.Code § 1.7–704(a).

Under Section 5 of the Charter, when the Chief Executive exercises his veto power, County Council may override his veto by a minimum vote of two-thirds of its members within seven days (presumably of the date the Chief Executive advises Council of his veto). However, in this case, Council, on or about December 17, 2002, about five days after Roddey's veto action, elected not to seek to override the vetoes, but rather adopted motions, by a vote of 9 to 6, declaring Roddey's reduction vetoes null and void, based on Council's conclu-

---

1. Roddey captioned this application as an appeal of the trial court's order vacating the automatic supersedeas. However, the proper form of pleading is a request to this Court to reinstate, and such characterization comports with the relief he is requesting.

sions that Roddey had not properly exercised the veto power granted to him under the Charter.

Roddey requested the following declarations: (1) that he has the power to exercise a "reduction" veto; (2) that the 2003 budget resolutions, as vetoed, are the lawful 2003 County budgets; (3) that Council's motions designating Roddey's vetoes null and void had no legal effect; and (4) that Council has no power to contest the validity of the 2003 budget resolutions, as vetoed, because it did not act within the time period allowed to override Roddey's vetoes. Alternatively, Roddey requested a declaration that, if he did not have the power to exercise a "reduction veto," then his striking of part of an appropriation constituted a valid veto of those entire items, and Council had a duty to override those items. Roddey argues that Council's failure to override those vetoes renders the resolutions, with those vetoed line items, the budget for 2003, but Council must commence to complete the 2003 budgets as to those items that were vetoed.

The trial court, in dismissing Roddey's complaint, looked at other counties that have adopted home rule charters, some as early as the 1970's, and was persuaded that Allegheny County, having had the benefit of considering the charters of three counties that specifically grant line-item reduction powers to their executive, would have included similarly specific language in its own Charter, if it had wanted to grant such power. The trial court also rejected Roddey's reliance on the Pennsylvania Supreme Court's decision in *Commonwealth v. Barnett*, 199 Pa. 161, 48 A. 976 (1901). That case involved an analysis of a governor's alleged constitutional power to exercise a reduction line-item veto.

The trial court determined that Council's failure to override the vetoes did not result in the resolutions becoming the final budgets, with the vetoes having full force and effect. Finally, the trial court concluded that a decision by the Court of Common Pleas of Allegheny County in the case of *Defazio v. James C. Roddey, Chief Executive*, G.D. 02–24871 (2003), did not preclude the trial court from considering the validity of Roddey's veto of the Sheriff's appropriation in the grants, special accounts and agency fund budget.

The trial court denied Roddey's Motion for Reconsideration, stating in its order that Roddey's striking of $1,514,270.00 from the grants, special accounts and agency fund budget, was an attempt to reduce the sheriff's operating budget by that amount, and that the *Defazio* decision did not have res judicata effect.

Roddey raises the following issues before this Court: (1) Whether the Supreme Court's analysis in *Commonwealth v. Barnett*, controls the interpretation of Roddey's line-item veto powers under the Charter; (2) Whether the Council can effect a de facto override of Roddey's vetoes by ignoring the budget resolutions as vetoed by Roddey; (3) Whether an unbalanced operating budget may be received and recognized as the lawful operating budget for 2003; and (4) Whether Roddey's line-item veto elimination of the Sheriff's appropriation from the county grants, special accounts and agency fund is void as a "reduction" of the sheriff's operating budget.

We begin by addressing Roddey's argument that the trial court erred by concluding that the Supreme Court's decision in *Barnett* is not applicable. We agree with the trial court that that decision does not apply. The obvious distinction between *Barnett* and this case is that *Barnett* involved an interpretation of a grant of constitutional power to the **governor**. While similar to each other, the state's tri-partite form of government is different from the

government established under a home rule charter. Additionally, the Supreme Court based its decision in *Barnett* partly on the fact that, following the adoption of the line-item veto provision in the Constitution, no one had challenged the Governor's reduction line-item vetoes. The Court was persuaded that this so-called acquiescence indicated acceptance by the legislature that the Governor had the power to veto by line-item reduction. While noting that such reasoning might not hold ground today, we also note that, in the present case, the record does not indicate any similar historical acquiescence by County parties to the use of the Chief Executive's reduction veto, nor would we expect that it would, considering the fact that the Charter did not become effective until 2000, only two years before the Chief Executive's exercise of the power became an issue here.

We observe that Article 9, Section 2 of the Constitution apparently vests municipalities with the power to adopt home rule charters that grant a chief executive a reduction-type line-item veto power. "A municipality which has a home rule charter may exercise any power or perform any function not denied by this Constitution, by its home rule charter or by the General Assembly at any time." *Id.*

We are left with the duty to consider whether the framers of the Charter's line-item veto provision, as adopted by the voters of Allegheny County, intended for the Chief Executive to have such power. Section 5 of the Charter provides that Council shall forward the operating and capital budgets to the Chief Executive within three days of adoption or amendment. The Chief Executive "may veto any

item." Although the Allegheny County Administrative Code appears to go further by adding that the Chief Executive may strike "or otherwise"[2] indicate his disapproval of such item or items, the powers described in the Administrative Code cannot enhance or diminish the powers set forth in the Charter, just as a state-wide act of legislation cannot add or delete powers or rights that spring from the state Constitution.

The act of adopting a budget is a legislative process. The Chief Executive acts in a limited legislative capacity in the process; his veto is a method of checking and balancing otherwise unfettered actions by the legislative branch, in this case, County Council.[3] However, the Chief Executive's power must similarly be limited in the process. If we were to accept Roddey's argument that the Charter's limited grant of power to the Chief Executive to veto items includes the power to reduce the appropriation, then we would likewise have to recognize not only that power to act in the negative, but also to act affirmatively with regard to the budget, by dictating item amounts above that which Council has set forth in a budget resolution. Such an interpretation would extend the Chief Executive's power beyond that for which the Charter specifically provides, and would enhance his powers beyond the ordinary purpose for which the veto power is intended—to ensure that the legislature has some limits in its appropriations.

Although we cannot rely on the existence of other home rule charters that contain reduction veto provisions as legal authority, those charters do suggest the concerns that other municipalities might

---

2. This phrase may mean nothing more than that he may indicate his veto by a means other than "striking."

3. See, for example, *Fairfield v. Foster*, 25 Ariz. 146, 214 P. 319 (1923), describing the veto power as a method of deterring "pork barrel" spending.

have had with non-specific language such as that in the Allegheny County Charter. The drafters of those other charters may have been concerned that such non-specific language would either fail to provide for the reduction veto power they deemed warranted, or that the absence would, as discussed above, lead to the conclusion that a chief executive had more affirmative budgetary clout than merely the power to exercise a reduction line-item veto.

We are not persuaded by Roddey's arguments that the "strong executive" form of government and the zero-based budgeting concept envisioned by the Charter support his interpretation. A straightforward interpretation of the veto provisionas requiring the Chief Executive to strike an entire item—provides ample authority to accomplish both of those purposes. By striking items, the Council is forced to address the issues the Chief Executive raises; **his** duty under the zero-based budget concept has been performed. He can do no more. The Council, if it so intends, could thwart that duty despite his veto, whether he vetoes by reduction or the complete striking-off of an item. Although the reduction veto makes sense as an efficient tool for the two branches of government to reach some mutual accommodation, we are bound by the limits of the Charter's language. The language in the Charter is clear and plain—the Chief Executive may exercise a line-item veto, not a reduction line-item veto.

Accordingly, we conclude that the Charter grants to the Chief Executive only the power to strike certain items entirely, and not the power to reduce the amounts appropriated for individual line items in a budget resolution.

▮ Roddey argues that the operating and capital budgets, as vetoed, are the final lawful County budgets, because Council had the duty to override the ve-

toes by a two-thirds vote. Roddey argues that, even when Council believes that the Chief Executive has not properly exercised his veto power, it must comply with the Charter's veto-override provision. This issue requires us to consider the question of whether the improper reduction vetoes constitute a nullity or whether the act of vetoing in part results in a de facto veto of the entire item. The trial court relied upon this Court's affirmance of a trial court's opinion in *Whale's Tale, Inc. v. City of Pittsburgh,* 78 Pa.Cmwlth. 494, 467 A.2d 665 (1983). Based upon that decision, the trial court concluded that the improper exercise of the veto power renders the attempt to veto a nullity. We agree with Roddey that that decision is not applicable here. Significantly, that case involved a veto by the Mayor of Pittsburgh over a **non-legislative** matter, unlike this case, which involves the Chief Executive's exercise of a veto over a legislative matter.

We could uncover no legal authority in Pennsylvania addressing the legal status of a veto exercised in a manner beyond the power granted in the enabling legislation. However, other states have recognized that, when enabling legislation provides no specific reduction veto power, in order for a veto to be valid, the vetoing officer must strike down the entire item, and cannot disapprove part of an item and approve the remainder. *Brault v. Holleman,* 217 Va. 441, 230 S.E.2d 238 (1976). More persuasive is the authority cited by Council, *Fordice v. Bryan,* 651 So.2d 998 (Miss. 1995), in which the Supreme Court of Mississippi held the veto action of the Governor null and void when he sought to veto parts of a bill authorizing the issuance of bonds. Although the Governor had partial veto authority with regard to appropriations, that power did not extend to other types of legislation. The court held that the Governor's unconstitutional attempt to

exercise the partial veto power was a nullity. *Id.*

We similarly conclude that Roddey's attempt to exercise a power that the Charter did not grant to him results in a nullity of the vetoes he sought to effectuate by reduction.

In his brief Roddey contends that the trial court erred by judicially approving an operating budget that is not in balance. Roddey argues that Council's failure to override his vetoes rendered the budget, with his vetoes, final. Based upon this view, he seeks an order of the Court directing Council to commence proceedings to complete the 2003 budget to the extent vetoed. However, based upon our conclusion that his vetoes were null and void, we need not address his argument that the budget was incomplete. In his brief, Roddey seems to request the Court to declare the 2003 budget ultra vires and void, because it is not balanced. However, Roddey, in his complaint, while mentioning the fact that the budget is not balanced, does not specifically seek an order of the court to direct Council to balance the budget. Accordingly, we will not address this issue any further.

■ Roddey's last argument is that the trial court erred by concluding that his elimination of the sheriff's line-item in the grants, special accounts, and agency fund budget resolution was a reduction of the sheriff's appropriation. As we noted above, the Charter gives the chief executive the power to veto only items in the annual operating and capital budgets. While the grants, special accounts, and agency fund budget clearly constitutes appropriation legislation, the Charter provides the chief executive line-item veto power only with respect to operating and capital budget resolutions. Based upon this alternative theory, we conclude that the trial court did not err in concluding that Roddey's veto was improper.

■ As to Roddey's application for reinstatement of the automatic supersedeas, Roddey sought to ensure that Sheriff DeFazio's office would have to abide by the 2003 budget pending this Court's disposition of the appeal on the merits. Based upon our concurrent resolution of the underlying appeal above, we conclude that the issue is moot. Further, Council and Defazio's answer to the supersedeas appeal indicates that Roddey, Council and Defazio have reached an agreement regarding funding for Defazio's office. We hereby deny Roddey's application.

Based on the foregoing, we affirm the order of the trial court.

### ORDER

AND NOW, this 5th day of February 2004, the orders of the Court of Common Pleas of Allegheny County are affirmed.

Roddey's application to reinstate automatic supersedeas is denied.

## CONCURRING OPINION BY Judge PELLEGRINI.

I join with the majority but write separately to amplify why *Commonwealth v. Barnett*, 199 Pa. 161, 48 A. 976 (1901), in which our Supreme Court construed Article IV, Section 16 of the Pennsylvania Constitution[1] that the provision for a "line item" veto allows for a reduction in the appropriation, does not mean that every

---

1. Article IV, Section 16 provides: "The Governor shall have power to disapprove of any item or items of any bill, making appropriations of money, embracing distinct items, and the part or parts of the bill approved shall be the law, and the item or items of appropriation disapproved shall be void, unless repassed according to the rules and limitations prescribed for the passage of other bills over the Executive veto."

time a line item veto is provided in a Home Rule Charter that it can be inferred that the Chief Executive Officer also has the power to reduce the appropriation.

In *Barnett*, the Supreme Court interpreted the Governor's power to veto a line item as the power to partially reduce that line item, i.e., allowing for reduction in the appropriation. The question here is whether the same construction should be placed on Section 5 of the Allegheny Home Rule Charter that deals with the budget provision. It provides:

> Upon adoption or amendment of the annual operating and capital budgets by the County Council, the budgets shall be delivered within three days to the Chief Executive who, within seven days thereafter may veto any item. If the Chief Executive vetoes any item, the Chief Executive shall advise County Council in writing of the reason of the veto. County Council may override the veto within seven days by an affirmative vote of at least two-thirds of the seated Members.

If we were to apply the same interpretation to the term "item" as used in this provision, certainly, the Chief Executive as part of his power to line item veto would have the lesser included power to reduce the appropriation. Necessarily, that would also mean that not to give a mayor or a chief executive the power to reduce an appropriation where a line item veto is provided, the charter provision would have to say that it does not give him or her power to do so.

What the interpretation does not take into consideration is that the Allegheny County Drafting Committee had a different frame of reference when drafting Section 5 than that utilized in the 1901 interpretation of the Pennsylvania Constitution, even if they knew about it. First, line item vetoes are not ordinarily given to chief executive officers in local municipali-

ties. For example, one of the Optional Plans contained in the Home Rule Charter Act provides, with regard to vetoes, that:

> Ordinances adopted by the council shall be submitted to the executive (mayor) who shall, within ten days after receiving any ordinance, either approve the ordinance by affixing his signature thereto, or veto the ordinance by delivering it to the municipal clerk together with a statement setting forth his objections. The clerk shall immediately notify the council of the veto. No ordinance or any item or part thereof shall take effect without the executive's (mayor's) approval, unless the executive (mayor) fails to return an ordinance to the clerk within ten days after it has been presented to him, or unless council upon reconsideration of the veto on or after the third day following its return by the executive (mayor) shall override the executive's (mayor's) veto by a vote of a majority plus one of the members.

53 Pa.C.S. § 3012(a).

Moreover, the power to veto has never been inferred to include the lesser included power to line item veto. When these provisions were added to charters, the power to line item veto is considered an additional power that has to be specifically enumerated.

Additionally, when interpreting this provision, the drafters' frame of reference was not the Pennsylvania Constitution, but other Home Rule Charters, especially other County Home Rule Charters. Establishing that giving other than a total veto was giving the Chief Executive additional power and that their drafting sources were other Home Rule Charters, at a Home Rule Charter Drafting Committee Meeting, Daniel Booker, a member of the Home Rule Charter Drafting Committee and the member that appeared to be given the task of addressing what powers should be

vested in the County Executive, addressed the line item veto and reduction as distinct items, each of which could be added to the County Executive powers. He stated:

Then there are more specific issues of what certain kinds—should there be a rule for certain kinds of laws that are made or certain areas of enforcement. And probably the most important kind of law that's made where maybe there need to be some special rules is what Terry [McVerry, another Committee member] was talking about, the kind of laws that deal with spending money or raising money or the whole budgeting process. And there I think we need to consider the whole question of—well, the question of a line item veto, of a veto power that's a little different for budgeting than it would be for all the other. The typical veto power is you veto the whole bill or you approve the whole bill. In the budgeting area many charters include the power of—line item veto power. The line item veto can be overridden, of course, but many budgets, many charters contain a line item veto. And it's my personal view, which, again, I would argue we ought to support here, is that a line item veto is appropriate with respect to budget bills.

I think there's a more interesting—some charters, in more recent times, have been given a power not only to veto a line item, but to reduce a line item, so that the executive would be in a position to not only say, no, I won't approve that line item in the budget, but to say, but I will approve not a million dollars to be spent on a whatever, but I'll approve, you know, $300,000 to be spent on swimming pools, okay, whatever.

Do we want to give the executive that power? Again, of course, that exercise of that veto would be subject to being overridden. So that in the end, the law of what money is going to be spent is made by the council.

I think that's a—you know, whereas I would strongly recommend that we do have a line item veto, I'm just not sure where I come out personally on this issue of a veto, you know, to reduce it. Maybe that's a good idea, but I just haven't thought about it enough.

(Allegheny County Charter Drafting Committee Meeting, October 2, 1997, at 64–65.)

As to the other County Home Rule Charters with such provisions that Mr. Booker was referring to in his comments, the trial court, through Judge Joseph James, noted in its opinion that the following counties had adopted Home Rule with similar provisions in their Charter and had added the power of line item veto:

There are five Home Rule counties in the Commonwealth, excluding Allegheny County.[2] A review of three Home Rule Charters with similar veto provisions is helpful in determining whether the Allegheny County Executive has the power to reduce an appropriation made by the County Council.

Erie County adopted Home Rule in 1976 and it became effective in 1978. The Erie County Executive's veto powers are set forth in Section 1–8.6 of the Erie County Home Rule Charter.

§ 1–8.6 Item Veto of Reduction.

Upon adoption of a budget by the County Council, it shall be delivered within three (3) days to the County

---

**2.** "Delaware and Lackawanna Counties have also adopted Home Rule, but their budget process does not contain veto powers in any branch of their government. Philadelphia has adopted Home Rule, but it is a city-county, and their form of government differs so greatly that an analysis of that budget process is not helpful." (October 9, 2003 Trial Court opinion at 3, ftnt. 1.)

Executive, who within ten (10) days thereafter, may veto or reduce any item contained in it. If the County Executive *vetoes or reduces* any item in the budget, the County Executive shall return it to the County Council with the reasons for the *veto or reduction* stated in writing. The County Council may re-approve any item over the veto or reduction of the County Executive within ten (10) days, with an affirmative vote of at least one more than a majority of the total members of the County Council in office. 325 Pa.Code § 1–8.6 (Emphasis added).

Lehigh County adopted Home Rule in 1975 and it became effective in 1978. The Lehigh County Executive's veto powers are set forth in Section 1.7–705 of the Lehigh County Home Rule Charter.

§ 1.7–705. Item Veto or Reductions.

Upon adoption of a budget by the Board, it shall be delivered within three (3) days to the County Executive, who within ten (10) days thereafter may *veto or reduce* any items contained in it. If the County Executive vetoes or reduces any item in the budget, he or she shall return it to the Board with his or her reasons for the *veto or reduction* stated in writing. The Board may re-approve any item over the veto or reduction of the County Executive within fifteen (15) days with an affirmative vote of at least a majority plus one (1) of the members of the Board in office. 339 P.Code § 1.7–705. (Emphasis added)

Northampton County adopted Home Rule in 1976 and it became effective in 1978. The Northampton County Executive's veto power in Section 1.7–704(d).

(d) Executive Veto.

The County Executive shall have the *power by veto to delete or decrease* any item in the budget adopted by the County Council, if he notifies the County Council in writing within seven (7) days after the adoption of the budget by the County Council of the veto and the reasons for it. The County Council shall have the power to override the veto of any item by the vote of at least two-thirds (2/3) of the members. 348 Pa.Code § 1.7–704. (Emphasis added)

(October 9, 2003 Trial Court opinion at 3–4.) As can be seen, Section 5 of the Allegheny Home Rule Charter is patterned after these provisions, but with one important exception—it does not give the County Executive the ability to reduce the appropriation following a line item veto.

Because the intent of the drafters was not to give the County Executive a line item veto, I join in the majority opinion.

DISSENTING OPINION BY Judge COHN.

Respectfully, I dissent.[1]

I agree completely with the dissenting opinion of my colleague, Judge Simpson. I write separately to advance yet another argument supporting reversal. I believe that *Commonwealth v. Barnett*, 199 Pa. 161, 48 A. 976 (1901), is applicable, rather than distinguishable, in the present case. Both *Barnett* and the case *sub judice* involve examination of the executive function (in *Barnett* the Governor, here the County Executive), both executives are given the right to approve the budget and both are afforded a line item veto. In neither the constitutional provision applicable to the

---

1. Although the majority states that Roddey has appealed two orders, a denial of reconsideration is not appealable. *Estate of Merrick*, 432 Pa. 450, 247 A.2d 786 (1968). Therefore, that order is not before us for review.

Governor nor the home rule charter at issue here does the language *explicitly* state that this line item veto includes a reduction veto power. Yet, the Supreme Court of Pennsylvania held that one existed in *Barnett*. I perceive no convincing basis for declining to apply that holding in this case.[2,3]

The majority, in declining to apply *Barnett*, notes that the charter, itself, says only that the County Executive "may veto any item" and reasons that the Allegheny County Administrative Code cannot enhance this power. I agree with the principle stated, but not with how it is applied here, for the simple reason that I do not think that this case concerns an *enhancement* of power. Instead, I believe that the greater power, *i.e.*, a full veto, includes the lesser power, a reduction veto. The concept of the greater encompassing the lesser is well known in the law and examples abound. *See, e.g., Civil Service Commission v. Eckles*, 376 Pa. 421, 103 A.2d 761 (1954) (power to dismiss includes power to demote); *Kaufman v. Pittsburg & C.S.R. Company*, 217 Pa. 599, 66 A. 1108 (1907) (power to purchase includes power to lease); *Huber v. Crosland*, 140 Pa. 575, 21 A. 404 (1891) (power to sell property includes power to mortgage it).

Moreover, I strongly disagree with the majority's reasoning that the *opposite* is also true, *i.e.*, that a lesser power encompasses a greater one, a notion it appears to

embrace when it states that to rule as the County Executive requests would mean that he could *increase* line item amounts beyond those presented to him by County Council. Stated another way, the majority appears fearful that by authorizing the reduction veto, it would, *a fortiorari*, be placing its imprimatur on an "enlargement" veto. However, the lesser does not include the greater, and this has never been the law.

As the majority recognizes, a reduction veto is an "efficient tool" for the two branches of government to reach some mutual accommodation. I agree and, furthermore, find nothing in the charter or in the principles of legal construction that would lead me to conclude that such power is not within the authority of the County Executive. Accordingly, I would reverse the trial court's order.

Judge SIMPSON joins.

DISSENTING OPINION BY Judge SIMPSON.

I respectfully dissent, because I believe *Commonwealth v. Barnett*, 199 Pa. 161, 48 A. 976 (1901), in which our Supreme Court construed item veto, controls construction of line item veto in the Administrative Code of Allegheny County.[1]

In *Barnett* our Supreme Court defined the term "item" as used in Article IV, Section 16 the Constitution of 1874 in the context of describing "the Executive veto."

---

2. Additionally, the majority concedes that the Pennsylvania Constitution does appear to vest with municipal authorities the power to adopt home rule charters that grant chief executives a reduction veto.

3. The majority also distinguishes *Barnett* by quoting language in the opinion which observed that the General Assembly had "acquiesced" in interpreting the constitutional provision to allow the reduction veto, because it had not challenged the exercise of that veto. It then goes on, however, to acknowledge that "such reasoning may not hold ground today,"

recognizing that the charter at issue in this case has been in existence for only a few years.

1. Article VIII, Section 801.07(C) of the Administrative Code of Allegheny County, titled *Submission of Adopted Annual Budgets to Chief Executive; Line Item Veto*, provides, with emphasis added:

   If the Chief Executive disapproves of any *item* in the adopted budget(s) or amendment(s) to the adopted budget(s), then the Chief Executive may *veto any such item* by

The Court specifically rejected the "whole or none" construction of the term and concluded that "item" and "parts" were synonyms as used. *Id.* at 173–74, 48 A. at 978–79. Thus, the Supreme Court construed an item veto as permitting veto of part of an item. After the *Barnett* decision, the operative constitutional language was readopted, and it currently exists, in our state Constitution.

In ascertaining legislative intent, we may presume that "when a court of last resort has construed the language used in a statute, the General Assembly in subsequent statutes on the same subject matter intends the same construction to be placed upon such language ." 1 Pa.C.S. § 1922(4). Indeed, failure of the legislature, subsequent to a decision of the Supreme Court construing a statute, to change by legislative action the law as interpreted by the court creates a presumption that the interpretation was in accord with intent. *Commonwealth v. Wanamaker*, 450 Pa. 77, 296 A.2d 618 (1972); *In re Employees of Uniontown Hospital Ass'n*, 432 Pa. 146, 247 A.2d 621 (1968).

Absent a clear expression to the contrary, we should strive for predictability by following our Supreme Court and construing "item" and "parts" as synonymous here. Departure from judicial construction, and espousal of a rejected "whole or none" construction, prompt my dissent.

Judge COHN joins in this dissent.

striking or otherwise indicating *disapproval of such item* and by returning the budgets or amendment(s) to the budgets within seven (7) Business Days after receiving it to the Council Clerk with an attached writing indicating the specific line items which ·are disapproved and the objections to such items. The objections shall be part of the County Council proceedings. The Council Clerk shall make an official record of the line item veto(s) and return of the budget(s) or amendment(s) to the budget(s). *Any parts of the budget(s) or amendment(s) to the budget not vetoed shall enter into effect.* Allegheny County, Pa., Administrative Code of Allegheny County (June 20, 2000).